[No. 63863-7-I.   Division One.   November 23, 2009.]

GARY FOX, *Appellant*, v. THE DEPARTMENT OF RETIREMENT
SYSTEMS, *Respondent*.

518

*Paul A. Neal,* for appellant.

*Robert M. McKenna, Attorney General,* and *Kathryn Wyatt* and *Spencer W. Daniels, Assistants,* for respondent.

¶1 LAU, J. — After the Washington State Department of Retirement Systems denied Gary Fox's claim for Public Employee Retirement System (PERS) membership based on his part-time University of Washington janitorial employment from 1970 through 1972, Fox appealed to the Thurston County Superior Court. The court affirmed the Department's final order. Fox appeals that order, arguing the Department's decision misapplied the burden of proof and is not supported by substantial evidence. Because the Department properly imposed the burden of proof on Fox to establish he worked the requisite number of hours for PERS membership and its findings of fact are supported by substantial evidence, we affirm the Department's order disqualifying him for PERS retirement benefits.

## FACTS

¶2 Gary Fox attended the University of Washington between September 1968 and June 1972. While a student, Fox was a member of the University's gymnastics team. His gymnastics coach, Dr. Eric Hughes, also taught community classes through the University's extension services. Fox worked as a student assistant in these classes. And while attending the University, Fox worked for Bethlehem Steel Corporation in 1968, 1969, and 1970. According to his Social Security records, this work occurred primarily during the summer. But he also worked for the company during the school year, into the last quarter of 1970. Earlier in the school year, Fox asked Hughes for help finding additional work. After learning about a job opening with the University's janitorial department, Hughes contacted M. B. Byrd, the manager responsible for filling the opening, and recommended Fox for the job. Byrd interviewed Fox and hired him.

¶3 Fox began working as a janitor at the University's health sciences complex on June 1, 1970. Soon after, he was transferred to a different area of campus under the immediate supervision of Joseph Caldwell. He worked under

Caldwell's direction until June 1972, earning up to $2.05 per hour. In addition to his job as a janitor and ongoing work as a student assistant for Hughes's gymnastics classes, Fox also served as a volunteer reserve officer with the Seattle Police Department. After graduation, he hoped to work in law enforcement.

¶4 In 1974, the city of Tukwila hired Fox as a police officer. Fox immediately joined the Washington State Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF). He continued as an active contributing member of this plan until January 7, 1990, when he retired due to a work-related disability.

¶5 In 1991, he started working as an investigator for the Washington State Attorney General's Office. Because he was already receiving LEOFF retirement benefits, he was not permitted to join PERS. Since March 19, 1976, employees have generally been prohibited from participating in both PERS and LEOFF. RCW 41.04.270(1).[1] But in 1995, the Department adopted a rule clarifying that this prohibition is inapplicable if a person can establish membership in PERS before March 1, 1976.[2] WAC 415-108-725.

¶6 Fox claimed he qualified for PERS membership under this rule based on his janitorial work between June 1970 and June 1972. He remembered working 20 hours a week throughout this period. He also remembered filling out a PERS enrollment form and having deductions taken out of his janitorial pay for Social Security and PERS contributions. But despite a comprehensive search, Fox found no records documenting his janitor job, related Social Security tax

---

[1] In pertinent part, this statute states, "Except as provided in [sections omitted], on and after March 19, 1976, any . . . former member who . . . is the beneficiary of a disability allowance from any public retirement system listed in RCW 41.50.030 shall be estopped from becoming a member of or accruing any contractual rights whatsoever in any other public retirement system listed in RCW 41.50.030 . . . ." RCW 41.04.270(1).

[2] Under *City of Pasco v. Department of Retirement Systems*, 110 Wn. App. 582, 42 P.3d 992 (2002), a person can establish membership by demonstrating that he or she met all the statutory requirements for membership, even if he or she was not actually enrolled prior to March 1, 1976.

payments, or PERS contributions. In addition, University personnel discovered no employment records for Fox except for a small portion of his student assistant pay in 1969 and 1970. They found no record of Fox's PERS enrollment form or PERS contributions. And the Social Security Administration records showed no earnings for Fox's employment at the University. The Department searched its records as well but found no evidence to support his claim. Fox discovered no federal income tax records for the critical period between 1970 and 1972.

¶7 After the Department denied Fox's claim for PERS membership and service credits, he appealed the denial to the Department's presiding officer, who then conducted an evidentiary hearing pursuant to the Administrative Procedure Act, chapter 34.05 RCW. At the hearing, Fox testified that he had worked 80 hours a month, 12 months a year, for 2 years. He stated that he did not take summers off, that he typically worked 4 hours a day, 5 days a week, and that the hours he worked varied based on his class schedule. He testified that he received paychecks directly from the University for this work and that PERS contributions were withheld from his paychecks.[3]

¶8 Fox also submitted a 1974 letter of recommendation written by Caldwell, his former supervisor, to the Tukwila Police Department. In part, it stated,

> I am Joseph Caldwell, Gary's former supervisor while employed at the University of Washington. I have know[n] Gary since he came to work for me as a custodian in July of 1970. He held that position until he graduated in June of 1972. His duties not only included augmenting my regular crew with cleaning and maintaining the classrooms, labs and bathrooms, but he did many special projects for me due to his special hours he was allowed to work as a half time employee.

In addition, Fox provided a signed declaration from Byrd that stated, "I remember interviewing and hiring Gary in

---

[3] Hughes, Fox's gymnastics coach, testified that he found jobs for student athletes like Fox through his university contacts. But he had no knowledge about Fox's work schedule or payment for work performed.

June of 1970 as a half-time custodian scheduled to work 80 hours per month."

¶9 The Department presented two witnesses. Kathleen Dwyer, the director of the University's benefits office, explained that in the 1970s, the University maintained a centralized payroll system for its employees, including student employees. She testified that no university department had authority to hire and pay an employee outside the central payroll system. She testified that the University maintains copies of its payroll files at its records retention center, where they are organized alphabetically and by year of employee termination. These records are retained for 75 years. According to Dwyer, the University also maintains on microfiche a copy of every payroll it has ever generated. Dwyer said that she personally searched the University's payroll records and microfiche, but "found absolutely no evidence that he was a University of Washington employee" between June 1970 and June 1972.

¶10 And Michelle Hardesty, PERS plan administrator, described the comprehensive but unsuccessful efforts by PERS plan staff to locate records to support Fox's PERS eligibility. After a diligent search, she concluded no such records existed to support Fox's claim that he enrolled in the PERS plan.

¶11 On March 7, 2008, the presiding officer entered a final order, containing extensive findings of fact and conclusions of law, denying Fox's claim for PERS membership. While the presiding officer found that Fox worked at the University of Washington between June 1970 and June 1972, she nevertheless concluded that Fox failed to present sufficient evidence to prove that he satisfied all the requirements for PERS membership. Specifically, the presiding officer concluded that Fox failed to show he was paid for the requisite number of hours for a PERS-eligible position. Fox appealed to the superior court, which affirmed the Department's final order. He now appeals that order to this court.

## ANALYSIS

¶12 Fox asserts the Department's denial of his request for PERS membership was invalid because (1) the Department's presiding officer erroneously interpreted or applied the law and (2) portions of her decision are not supported by substantial evidence.[4] Appellant's Br. at 15; RCW 34.05.570(3)(d), (e). When reviewing the Department's decision, we sit in the same position as the superior court, applying the relevant standards of review from the Administrative Procedure Act (APA) directly to the record. *Hunter v. Univ. of Wash.*, 101 Wn. App. 283, 288, 2 P.3d 1022 (2000); RCW 34.05.570. Under the APA, Fox bears the burden of establishing the Department's action was invalid. RCW 34.05.570(1)(a). We review the Department's legal conclusions de novo. *Bullseye Distrib., LLC v. Gambling Comm'n*, 127 Wn. App. 231, 237, 110 P.3d 1162 (2005). However, while we are not bound by the agency's interpretations of law, we accord substantial weight to the agency's interpretation if the agency is operating in an area where it has specialized expertise. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998). We review issues of fact using the substantial evidence standard. *Lawrence v. Dep't of Health*, 133 Wn. App. 665, 672, 138 P.3d 124 (2006). "Evidence is substantial if it is of sufficient quantity to persuade a fair-minded person of the truth or correctness of the agency order." *Hahn v. Dep't of Ret. Sys.*, 137 Wn. App. 933, 939, 155 P.3d 177 (2007).

¶13 Fox first argues the Department erred by concluding he did not work in a PERS-eligible position.

---

[4] RCW 34.05.570(3) provides, "The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:

". . . ;

"(d) The agency has erroneously interpreted or applied the law; [or]

"(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court . . . ."

When Fox began the janitor job, a PERS-eligible position was defined to include "[a]ny position which normally requires five or more uninterrupted months of service a year for which regular compensation is paid to the occupant thereof." Former RCW 41.40.010(26)(a) (1969). Based on then-established PERS board interpretations, which are not disputed here, a minimum of 70 compensated hours in a calendar month constituted a month of service. Based on these authorities, the presiding officer concluded that Fox's janitor position would have been PERS-eligible if he "was paid for at least 70 hours of work in each of five consecutive months and into a sixth month without a break." Fox does not dispute this interpretation of PERS eligibility law. Instead, he maintains that the presiding officer erred when she allocated the burden of proof to him to show that he worked the requisite number of PERS-eligible hours.

¶14 According to Fox, he presented enough evidence to raise a "just and reasonable inference" that he worked more than 70 hours each month for five consecutive months. He points to the 1974 letter from Caldwell stating that he was a "half time" employee, Byrd's declaration that he worked 80 hours per month, and his own testimony about his work hours. He argues that this evidence was sufficient to "shift the burden" to the Department to disprove his contention that he worked the requisite number of hours. To support this burden-shifting theory, Fox relies on federal cases that are limited to claims for unpaid wages under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219.[5] These cases generally hold that where an employer fails to maintain adequate records—as required by FLSA—the employee need prove the amount of uncompensated work performed only by "just and reasonable inference," after which the burden shifts to the employer to come forward with contrary evidence. *See Reich v. S. New England Telecomms.*

_____

[5] The only exception is *MacSuga v. Spokane County*, 97 Wn. App. 435, 983 P.2d 1167 (1999), which involved a claim for benefits under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654. But as the court there noted, FMLA incorporates this FLSA burden-shifting principle pursuant to federal regulation. *MacSuga*, 97 Wn. App. at 445 (citing 29 C.F.R. § 825.110(c)).

*Corp.*, 121 F.3d 58, 66-67 (2d Cir. 1997); *Gilbert v. Old Ben Coal Corp.*, 85 Ill. App. 3d 488, 407 N.E.2d 170, 40 Ill. Dec. 939 (1980); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943 (2d Cir. 1959); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).

¶15 But Fox fails to show this burden-shifting rule extends beyond FLSA wage claims to the administrative context here. He cites no statutory or case authority for this proposition. And FLSA cases, which typically involve claims for unpaid overtime work that must be brought within a circumscribed period, differ substantially from this case. Here, the issue is an administrative determination of eligibility for a state pension plan based on a disputed period of employment in the remote past. And under WAC 415-08-420, "[t]he person appealing or requesting a hearing shall have the burden of proof in the matter." This rule places the burden on Fox to prove by a preponderance of the evidence that he worked the requisite number of hours over five consecutive months.[6] *See Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 797, 982 P.2d 601 (1999) (unless a statute or due process requires a different quantum of proof, the preponderance of the evidence standard applies to resolve disputes in administrative proceedings). We conclude that the presiding officer correctly applied this rule and the University's alleged failure to keep adequate records did not relieve Fox of his burden.

¶16 This conclusion is supported by *In re DeLuca*, 48 A.D.3d 876, 850 N.Y.S.2d 715 (2008), which involved a nearly identical issue. DeLuca sought service credits in a retirement system based on claimed employment between 1964 and 1966. There was no dispute that he worked for an eligible employer, but he was unable to produce objective

---

[6] Fox argues that by requiring "nothing less than contemporaneous records generated by the employer" the Department is effectively requiring him to "prove his case beyond a reasonable doubt." Appellant's Reply Br. at 22. But the record indicates the Department does not limit its consideration to employer records. It also considers Social Security records, tax records, personal records, affidavits, and other evidence. Here, there is nothing in the presiding officer's order to suggest she used anything other than the preponderance of the evidence standard.

employment records to demonstrate how many hours he worked during the period in question. Instead, he produced testimony and statements from co-workers and friends. The court affirmed the denial of his claim. It held that DeLuca "has the burden of proof to establish entitlement to service credits" and that his evidence was insufficient to satisfy that burden. *DeLuca*, 48 A.D.3d at 877. *DeLuca* supports our conclusion that the FLSA burden-shifting rule does not apply in this context.

¶17 Fox next argues that the Department's decision is not supported by substantial evidence because he presented sufficient evidence to show that he worked the requisite number of hours.[7] He again emphasizes Caldwell's letter stating he was a "half-time" employee, Byrd's 2005 declaration that he was a "half-time" custodian, and his own testimony that he worked half time.[8] He argues that full time is 40 hours per week, so half time must mean 20 hours per week, which is more than the 70-hour per month minimum.

■■ ¶18 But the presiding officer considered Fox's evidence that he worked half time and found it to be insufficiently reliable. The presiding officer weighed the evidence and concluded,

> Mr. Caldwell's 1974 recommendation letter stating that Mr. Fox had worked "as a half-time employee" was written not to

---

[7] Fox's briefing on his substantial evidence challenge is not clear. While his citation to RCW 34.05.570(3)(e) suggests his contention is that the presiding officer's findings are not supported by substantial evidence in the record, the argument in his brief does not challenge any of her findings on this basis. Instead, it argues that the presiding officer should have made additional or different findings and that the findings she should have made are supported by substantial evidence. This argument invites us to reweigh the evidence on appeal, which we decline to do. Furthermore, even if Fox had properly raised a substantial evidence challenge under RCW 34.05.570(3)(e), we would reject it on this record. The presiding officer's 20-page decision addressed each disputed fact, resulting in 39 detailed findings. And our review of the record shows that these factual findings are amply supported by the evidence.

[8] Fox also asserts that his "receipt of health insurance confirms his half-time job required at least 70 hours per month." Appellant's Br. at 21. But the officer did not credit Fox's testimony that he received health benefits, and Fox presented no other evidence to support this assertion.

document his work hours in 1970 but to communicate in general terms the extent of the writer's familiarity with Mr. Fox's work and performance. Mr. Byrd's 2005 statement that he was "scheduled to work 80 hours per month," is no more than a statement of what Mr. Byrd remembers Mr. Fox's schedule generally was. Neither provides meaningful or specific corroboration that he actually worked the requisite number of hours . . . .

¶19 The presiding officer also questioned Fox's ability to accurately recall the hours he worked more than three decades earlier, especially considering his interest in the outcome. Finally, the presiding officer noted that Fox was a full-time student, a member of the University's gymnastics team, a part-time gymnastics teaching assistant, a volunteer reserve officer with the Seattle Police Department, and an employee at Bethlehem Steel Corporation—all at the same time he claimed to be working 20 hours per week as a janitor. Fox failed to persuade the presiding officer that he was able to engage in this full range of activities without ever dropping below 70 hours per month of janitorial work in any given five-month period.

¶20 Fox essentially asks this court to reweigh the evidence and come to a contrary conclusion. But it is well established that "[o]n factual questions the reviewing court cannot substitute its interpretation of the facts for the agency's interpretation or reweigh the evidence." *Van Sant v. City of Everett*, 69 Wn. App. 641, 650, 849 P.2d 1276 (1993). Here, Fox presented some evidence that he worked in a PERS-eligible position prior to 1976, but the presiding officer found it insufficient to satisfy his burden of proof. Accordingly, she denied his request for PERS membership. Because the presiding officer correctly allocated the burden of proof to Fox and substantial evidence supports the decision, we affirm.

SCHINDLER, C.J., and DWYER, J., concur.

Review denied at 169 Wn.2d 1012 (2010).