# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AARON E. RICHARDSON, | ) | No. 77289-9-I |
| Appellant, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| DEPARTMENT OF LABOR & INDUSTRIES, | ) ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: December 24, 2018 |
| | ) | |

LEACH, J. — Aaron Richardson appeals a superior court decision terminating his time-loss benefits because he rejected a transitional work offer. He claims that his employer did not make the offer, the offer did not involve work for his employer, and the work was not "meaningful and respectful." Because substantial evidence supports the superior court's contrary findings, we affirm.

## FACTS

Aaron E. Richardson is a journeyman carpenter. Since leaving high school, he has worked only in construction, doing manual labor.[1] Richardson injured his back in 2014 while employed as a vertical foreman for Conco & Conco Pumping Inc. As a result, he received time-loss compensation.

---

[1] Richardson did obtain his GED (general education diploma).

In June 2015, Richardson received a letter on Associated General Contractors' (AGC) letterhead offering him transitional light duty work. Janet Beuche, a claims consultant with AGC, signed the letter.[2] AGC is an association of Washington commercial contractors funded by dues paid by its members. AGC provides its members various services. AGC helps its program members manage workers compensation claims.

The June 2015 letter offered Richardson a "light duty job." It directed him to go to the Modified Duty Site Resource Center (Resource Center) where Tim Johnson would be his site manager. The letter said that Johnson would report Richardson's attendance to Catherine Santucchi, the Conco office manager. For doing this job, Conco would pay Richardson his regular wage plus benefits, more than his time-loss compensation rate.

The letter stated, "The knowledge you will gain through your participation is readily applicable when you return to work, i.e. you will become more familiar with the construction safety regulations, proper lifting techniques, etc." According to the letter and attached job analysis, once he completed his "comprehensive review of DOSH [Division of Safety and Health] safety regulations pertaining to construction," he might have "an opportunity . . . to receive Flagger certification,

_____

[2] Janet Beuche also uses the name "Janet Hansen," the name she used to sign the letter.

-2-

CDL[3] certification, CPR[4]/First Aid certification, and, if applicable, the opportunity to complete [his] GED." The job analysis noted that "[s]kill enhancement is accomplished through lectures, videos, written materials, worksheets, and discussions." Richardson's physician signed the job analysis. The job offer resulted in termination of Richardson's time-loss compensation on June 21, 2015.

Richardson attended the Resource Center as directed in the letter on June 22, 2015, from 6:00 a.m. to 2:30 p.m. When Richardson arrived at the Resource Center, Johnson, the supervisor, told Richardson that he was to read a binder of safety information each day. On that first day, Richardson read from a binder materials about "the structure of the L&I [Labor & Industries] program." While Richardson attended weekly safety meetings as a journeyman carpenter and vertical foreman, he was never required to read the type of safety information contained in this binder. Richardson refused to return after the first day.

At the Resource Center, Richardson saw about "a dozen" other people present, also reading out of binders, and Johnson, who took attendance and directed participants when to take their breaks. Richardson did not see any Conco signs or employees.

---

[3] Commercial driver's license.
[4] Cardiopulmonary resuscitation.

AGC members created the Resource Center 23 years ago because member companies often do not have on-site light duty work available for injured workers. According to Conco, the light duty work at the Resource Center gives workers the opportunity to learn about safe work practices. This benefits employers by having their workers review required safety information. It benefits workers by exposing them to this information. They also have the opportunity to obtain additional certifications to help with future employment.

Safety Educators owns and operates the Resource Center. It contracts with AGC to provide the challenged program. AGC members contribute annually to the Resource Center to maintain its availability. Safety Educators and its Resource Center supervisors have limited authority to direct what a worker does while at the Resource Center. The employer of injury determines the hours the worker is required to attend the Resource Center, the rate of payment, and the number of excusable absences. The employer of injury also pays the employee and is responsible for taking any disciplinary action for the worker's misbehavior at the Resource Center. If the employer does not provide specific direction and materials, the Safety Educators' supervisor will instruct the worker to begin on the safety review.

Conco presented the testimony of Robert Walsh to respond to Richardson's claims about the quality of the Resource Center activities. Walsh

went through the program at the Resource Center after he was injured in the 1990s. While at the Resource Center, Walsh followed a curriculum where he reviewed the Washington Administrative Code and answered test questions as he read. He found the work relevant for him as a member of the construction industry because it helped him learn necessary safety codes. This helped him to become a safety manager.

## Procedure

The Department of Labor and Industries (Department) terminated Richardson's time-loss compensation when he received the offer to work at the Resource Center. Richardson appealed the termination. He claimed that the job offer was invalid because his employer had not made it and it did not involve work for his employer. He also contended that the offered job was not light-duty transitional work. An industrial appeals judge reversed the Department's decision and ordered reinstatement of Richardson's time-loss benefits. The Board of Industrial Insurance Appeals (Board) affirmed the Department's order.[5] Richardson appealed to superior court. It affirmed the Board's decision. Richardson now appeals the superior court's decision.

In his notice of appeal, Richardson asserted that the following findings of fact are erroneous:

---

[5] The superior court's conclusions of law 2.3, 2.4, and 2.5 adopt verbatim the Board's conclusions of law 1, 2, and 3.

1.2     A preponderance of evidence supports the Board's Findings of Fact. The Court adopts as its Findings of Fact, and incorporates by this reference, the Board's Findings of Facts. Nos. 1 through 7 of the January 11, 2017 Decision and Order. Specifically the Court finds:

. . . .

1.2.3   Conco, through its retrospective rating group, offered Mr. Richardson a transitional or light-duty job that was to begin on June 21, 2015. His work hours were to be 6:30 a.m. to 2:30 p.m., Monday through Friday, and the work was to be performed at a facility operated by Safety Educators in Tacoma, Washington. Mr. Richardson was to be paid his full salary with benefits while he participated in the training program.[6]

. . . .

1.2.6   The transitional job offer came from Conco, and constituted work with Conco, the employer of injury. The transitional work would have maintained the employment relationship between Mr. Richardson and Conco.

1.2.7   The transitional job offer was for work that was available and different than Mr. Richardson's usual duties. The work had a relationship to Mr. Richardson's employment at the time of the injury and provided a meaningful and respectful work environment.

Richardson also challenges the following superior court conclusions of law:

2.2     The Court adopts as its Conclusions of Law, and incorporates by this reference, the Board's Conclusions of Law Nos. 1 through 3 of the January 11, 2017 Decision and Order.·

---

[6] Finding of fact 1.2.3 has an error: the hours offered Richardson were 6:00 a.m. to 2:30 p.m.

2.3   Conco's light duty job offer to Mr. Richardson constituted a valid offer of transitional work within the meaning of RCW 51.32.090(4).

2.4   The Board's January 11, 2017 Decision and Order is correct and is affirmed.

2.5   The June 23, 2015 Department order is correct and is affirmed.

## STANDARD OF REVIEW

Civil review standards guide appellate analysis of issues under the Industrial Insurance Act (Act).[7] We review the superior court's findings of fact to determine if substantial evidence supports them, looking only at the evidence presented to the Board.[8] We do not reweigh the evidence.[9]

Substantial evidence is evidence sufficient to "persuade a rational fair-minded person the premise is true."[10] If this court, after reviewing the record in the light most favorable to the party who prevailed in the superior court, finds substantial evidence supports the trial court findings, it reviews de novo whether those findings support the superior court's conclusions of law.[11] The Board's

---

[7] Title 51 RCW; RCW 51.52.140; Rogers v. Dep't of Labor & Indus., 151 Wn. App. 174, 180-81, 210 P.3d 355 (2009); City of Bellevue v. Raum, 171 Wn. App. 124, 139-40, 286 P.3d 695 (2012).

[8] Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 5, 977 P.2d 570 (1999); Dep't of Labor & Indus. v. Shirley, 171 Wn. App. 870, 879, 288 P.3d 390 (2012).

[9] Fox v. Dep't of Ret. Sys., 154 Wn. App. 517, 527, 225 P.3d 1018 (2009).

[10] Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).

[11] Street v. Weyerhaeuser Co., 189 Wn.2d 187, 205, 399 P.3d 1156 (2017); Ruse, 138 Wn.2d at 5 (quoting Young v. Dep't of Labor & Indus., 81 Wn. App. 123, 128, 913 P.2d 402 (1996)).

interpretation of the Act does not bind an appellate court.[12] However, in most circumstances, "it is entitled to great deference."[13]

Because the legislature has said that the purpose of the Act is to provide compensation to all covered employees injured in employment,[14] a court construing its provisions should resolve doubts in the worker's favor.[15] This liberal rule of construction applies to interpretation of the Act but does not apply to questions of fact.[16]

## ANALYSIS

### Assignment of Error and Issues Raised

As a preliminary matter, the Department claims that this court should not consider Richardson's appeal because he did not include in his opening brief specific assignments of error to findings of fact.[17] But Richardson's notice of appeal identifies the findings of fact and conclusions of law that he challenges. And his briefing clearly supports those challenges with argument, citations to the record, and legal authority.

---

[12] Weyerhaeuser Co. v. Tri, 117 Wn.2d 128, 138, 814 P.2d 629 (1991).
[13] Weyerhaeuser Co, 117 Wn.2d at 138.
[14] RCW 51.04.010.
[15] Dennis v. Dep't of Labor & Indus., 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).
[16] Ehman v. Dep't of Labor & Indus., 33 Wn.2d 584, 595, 206 P.2d 787 (1949).
[17] RAP 10.3(g).

RAP 10.3(a)(4) requires an appellant to include a "separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." This court generally will review only an alleged error a party has included in an "assignment of error or clearly disclosed in the associated issue pertaining thereto."[18] But we have the discretion to "waive or alter the provisions of any of these rules . . . to serve the ends of justice."[19] RAP 1.2(a) states that "[c]ases and issues will not be determined on the basis of compliance or noncompliance with these rules except in compelling circumstances where justice demands."

Justice does not demand strict compliance with the rules here. Richardson's notice of appeal and the briefing make his claims clear.[20] The briefing of both respondents demonstrates that Richardson's failure to follow the requirements of RAP 10(a)(4) did not hamper their ability to respond fully to Richardson's claims. So we consider the merits of his appeal.

### Transitional Work

RCW 51.32 governs compensation for covered workers injured in the course of their employment. RCW 51.32.090(4) provides that an employer of injury can receive wage subsidies from the Department for providing "light duty or

---

[18] RAP 10.3(g).
[19] RAP 1.2(c).
[20] Daughtry v. Jet Aeration Co., 91 Wn.2d 704, 710, 592 P.2d 631 (1979).

transitional work" to a worker entitled to temporary total disability benefits.[21] To receive these subsidies, the worker's medical provider must restrict the worker from his usual work.[22] And a physician or nurse practitioner also must certify the transitional work as appropriate for the worker.[23] Before this can happen, the employer of injury must provide a statement of the work to both the provider and the worker.[24] The description of the work certified by the provider limits the employee's activities.[25] Once the employer offers the certified work, the worker's temporary total disability payments end, replaced by wages earned in the temporary transitional position.[26] If the provider determines that the transitional work should stop because it is impeding the worker's recovery, "the worker's temporary total disability payments shall be resumed when the worker ceases such work."[27]

The subsidy provided to employers to pay injured workers for transitional work is aimed at "encourag[ing] employers to maintain the employment of their injured workers."[28] This goal is different than that for vocational rehabilitation,

---

[21] RCW 51.32.090(4)(a); WAC 296-16A020(2).
[22] RCW 51.32.090(4)(b); WAC 296-16A020(2).
[23] RCW 51.32.090(4)(b); WAC 296-16A020(3).
[24] RCW 51.32.090(4)(b); WAC 296-16A020(3).
[25] RCW 51.32.090(4)(j); WAC 296-16A020(4).
[26] RCW 51.32.090(4)(b).
[27] RCW 51.32.090(4)(b).
[28] RCW 51.32.090(4)(c).

covered by a separate section of the Act, which aims to rehabilitate and retrain workers.[29]

In 2003, the Department issued Interim Policy 5.15, "Adjudicating Transitional Job Offers and Eligibility for Time-Loss Compensation and Loss of Earning Power Benefits." The Department uses this policy when deciding if a worker is entitled to time-loss benefits when an employer and employee disagree about a transitional job offer. This policy requires that the job must come from the "employer of record" and must meet RCW 51.32.090(4) requirements. These require that the employer provide sufficient information to the worker and medical provider to allow certification of the work. The description of the job should include the job duties, location and start date, number of hours, and, if appropriate, a graduated schedule of hours and/or duties. For the employer to be reimbursed, the work must be related to the worker's employment but not specifically to the employee's job duties at the time of the injury. It must be work for the employer of record and "[s]hould provide a meaningful and respectful work environment."[30]

Richardson claims that the job offer he received did not satisfy RCW 51.32.090(4). Specifically, he contends that Conco, his employer of injury, did

---

[29] RCW 51.32.095(1).
[30] Dep't of Labor & Indus., Interim Policy 5.15, at 2 (effective Sept. 15, 2003).

not make the offer and that his activity at the Resource Center was not for Conco's benefit. He also claims that the job was not "work" and did not provide a "meaningful and respectful work environment."

A. *Employer of Injury*

Richardson claims that the job offer was not "a valid light duty job offer because it was not from his employer of injury and was not for work with the employer of injury."

The parties agree that the transitional work must be offered by, and for the benefit of, the employer of injury—here, Conco.[31] The parties disagree about who offered the job and whether Richardson was doing the work for Conco. They also disagree about the ability of an employer to use an agent to make a job offer and whether AGC and Safety Educators acted as Conco's agents.

The text of RCW 51.32.090(4) does not expressly answer the agent question. It neither permits nor prohibits an employer from using an agent. Richardson contends that a 1993 amendment to the statute that changed "an employer" to "an employer of injury" shows that an employer may not use an agent.[32] The legislature clearly intended to make the employer of injury responsible for the transitional job offer and work program. But a principal has responsibility for its agent's actions. So this amendment does not show that the

---

[31] WAC 296-16A-020(1)-(2).
[32] LAWS OF 1993, ch. 299, § 1.

statute prohibits an employer of injury from using an agent to provide transitional work.[33] We note that the text of the Board's order and decision identifies AGC as Conco's agent and does not consider this a violation of any statutory requirement. Richardson provides no additional authority for the premise that a principal may not use an agent to provide the job offer and work. In the absence of any statutory prohibition, we defer to the Department's expertise and accept the conclusion implicit in its decision that an employer may act under the statute through an agent.

Substantial evidence supports the finding that AGC and Safety Educators acted as agents for Conco. An agency-principal relationship arises when a principal has actual authority over the agent's actions.[34] An agent must "reasonably believe[ ]" that the principal has authority based on the "principal's [direct or indirect] manifestations to the agent."[35] The central question: is does the principal have "the right to control the . . . actor's physical conduct in the

---

[33] Cf. Chi. Title Ins. Co. v. Office of Ins. Comm'r, 178 Wn.2d 120, 137, 309 P.3d 372 (2013) (describing the scope of agent authority and the resultant liability that accrues to the principal).

[34] RESTATEMENT (THIRD) OF AGENCY §2.01 (AM. LAW INST. 2006).

[35] RESTATEMENT (THIRD) OF AGENCY §2.01 cmt. c.

performance of the service[?]"[36] Direct supervision is not necessary for there to be an agency relationship.[37]

Conco had final authority for the job offer and controlled the conduct of Richardson at the Resource Center. Conco authorized the job and directed AGC to make the job offer. AGC discussed with Conco all of the actions it took regarding Richardson's transitional work. Conco, not Safety Educators, had final oversight over Richardson's activities at the Resource Center, his hours, and his compensation. Conco was also responsible for paying and disciplining him. The Resource Center itself exists only through funding from AGC members like Conco. It benefits these members by training workers in safety regulations relevant to the construction industry. Conco workers, like Richardson, benefit from access to safety information as well as the potential for gaining additional training and certifications.

Richardson claims that Conco did not offer him the job because the offer letter came from an AGC employee on AGC letterhead. He also suggests that the lack of signage and obvious Conco equipment and the absence of Conco managers at the Resource Center show that Conco was not his ultimate employer. But other substantial evidence supports the trial court's contrary

---

[36] Baxter v. Morningside, Inc., 10 Wn. App. 893, 895-96, 521 P.2d 946 (1974) (discussing what must be found for a principal to be controlling an agent during a negligent act).

[37] Baxter, 10 Wn. App. at 896.

factual findings. Because an appellate court does not reweigh evidence on review, Richardson's factual challenges about who made the work offer and who was the employer fail.

*B. Work*

Richardson also claims that the offered job was not work meeting the requirements of RCW 51.32.090. In addition, he contends that the Resource Center was not a "meaningful and respectful work environment."

RCW 51.32.090 and the implementing regulations do not define "transitional work" beyond the requirements that the employer of injury offer work for that employer and a medical provider approved it for the injured worker. Although agency policies do not have the force of law, this court can look to them to interpret statutes with undefined terms.[38] Interim Policy 5.15 requires that the transitional work relate to the worker's employment when injured. But the duties do not need to be identical. The job "should provide a meaningful and respectful work environment." Unfortunately, the policy does not provide guidance about what the Department considers a "meaningful and respectful work environment."[39]

---

[38] Stevens v. Brink's Home Sec., Inc., 162 Wn.2d 42, 54, 169 P.3d 473 (2007) (Madsen, J., concurring).
[39] Interim Policy 5.15, at 2.

When a statute contains an undefined term, this court can look to a dictionary definition for the plain meaning of the term.[40] Webster's Third New International Dictionary defines "work" as "activity in which one exerts strength or faculties to do or perform."[41] More specifically "work" can refer to such activities as "sustained physical or mental effort valued as it overcomes obstacles and achieves an objective or result" or "a specific task, duty, function, or assignment often being a part or phase of some larger activity."[42] "Meaningful" is "having a meaning or purpose."[43] "Respectful" is "full of respect" or "showing deference."[44] Implicit in these definitions is the idea that an activity becomes work when it has a purpose beyond simply doing the activity.

The parties do not dispute that the material in the binder included information important for industry safety and that the Resource Center operates to provide safety information to people in the industry. During the administrative hearing, respondents provided evidence that the Resource Center's activities could help both Conco and Richardson by providing him a deeper knowledge of industry safety standards and the potential to gain additional training and certifications. This evidence sufficiently supports the trial court's findings that

---

[40] State v. Sullivan, 143 Wn.2d 162, 184-85, 19 P.3d 1012 (2001).
[41] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2634 (2002).
[42] WEBSTER'S at 2634.
[43] WEBSTER'S at 1399.
[44] WEBSTER'S at 1934.

Conco offered work having a relationship to Richardson's employment and the Resource Center provided a meaningful and respectful work environment. These findings support the conclusion that Conco offered transitional work meeting all statutory requirements.

Richardson relies on a case before Oregon's Worker's Compensation Board involving a "modified employment" program.[45] The Oregon board made it clear that its decision was specific to the record in the case before it. Also, Richardson has not demonstrated sufficient similarity between Oregon's program and Washington's program for the opinion to provide any persuasive guidance.

The superior court did not err in affirming the Board.

## ATTORNEY FEES

Richardson requests fees pursuant to RAP 18.1 and RCW 51.52.130. Because his appeal fails, we deny this request.

## CONCLUSION

Substantial evidence supports the trial court's findings that Conco, the employer of injury, was responsible for the job offer and for supervising the work

---

[45] In re Organ, Nos. 95-08498, 95-08107 (Or. Workers Comp. Bd. Feb. 26, 1997).

-17-

at the Resource Center.    Substantial evidence also supports its finding that Richardson's activity at the center was "work."  We affirm.

_____ Leach, J.

WE CONCUR:

_____ Smith, J.

_____ Mann, A.C.J.