# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Detention of | No.  52797-9-II |
| T.L.C., | |
| | UNPUBLISHED OPINION |

Worswick, J. — TLC appeals the superior court's order finding him gravely disabled as a result of a mental disorder.  He argues that the trial court's finding that he is gravely disabled was not supported by substantial evidence because his family was willing and able to help him provide for his essential needs of health and safety.  We hold that substantial evidence supports the superior court's finding of grave disability.  Consequently, we affirm.

### FACTS

TLC is a 77-year-old man who was charged with two counts of first degree child molestation.  The charges were dismissed without prejudice after TLC was found incompetent to stand trial.  TLC then stipulated to the entry of a 90-day commitment order based on grave disability.

At the conclusion of his initial 90-day commitment, doctors at Western State Hospital petitioned for an additional involuntary commitment period of up to 180 days, based on his grave disability, but recommended that TLC be placed in a less restrictive alternative placement.

At the hearing on the additional involuntary commitment period, a Pierce County commissioner heard testimony from TLC's psychologist, Dr. Donald Slone; TLC's daughter, Roxanne Wrice; and Wrice's daughter-in-law, Rindy Brown.

Dr. Slone testified as to TLC's diagnosis and symptoms. Specifically, Dr. Slone testified that TLC had a neurocognitive disorder, possibly Alzheimer's, which manifested as impaired memory, poor concentration, and reduced ability to problem solve. At the time of trial, TLC was taking a psychotropic medication for pseudo-dementia. Dr. Slone informed TLC of this diagnosis, but TLC did not believe him. In Dr. Slone's opinion, which was based on his observation of TLC and the level of care provided to him, if TLC were released from the hospital without any structured supports, he would not be able to meet all of his basic health and safety needs. This included food, shelter and medical care. At the hospital, TLC needed cueing for activities of daily living, such as hygiene, obtaining food, and taking his medication. Dr. Slone testified that TLC would be unable to manage his diabetes without assistance, an opinion based on TLC's need to be cued to perform basic functions such as hygiene. Dr. Slone also opined that TLC would be unable to direct his own psychiatric treatment.

Prior to his hospitalization at Western State, TLC had lived in a retirement facility where meals and cleaning were provided, and his cognitive abilities declined since that time. Dr. Slone testified that TLC showed signs of recent cognitive decline, and that his decline had been ongoing "for a while." Clerk's Papers (CP) at 52. Dr. Slone opined that TLC was gravely disabled as a result of his mental disorder, but supported a discharge to Wrice's home as a less restrictive alternative.

Wrice testified that she was willing to house TLC, provide his meals, and manage his medical needs, including diabetes care, doctor's visits, daily needs, and supervision. Throughout her testimony, Wrice mainly offered nonspecific assurances. For example, in response to a question about TLC's meals, Wrice said, "Oh, we'll cook and take care of all that." CP at 61. In

response to a question about TLC's diabetes care, Wrice said, "Oh. Well, if he—if he's—still is on the medicine, he will—he will have all his regimens; all his medicine will be taken care of." CP at 62. In response to a question about serving as TLC's power of attorney for his finances, Wrice said, "I have everything—I'll take care of everything for him." CP at 64. In response to a question about her comfort level with TLC being in the same home as Wrice's two young granddaughters, Wrice said, "Well, for one, he will never really be alone. We'll always be home. . . . My youngest daughter's—granddaughter—has diabetes. She's a diabetic—Type 1. . . . So there's absolutely no way we could ever leave her and stuff, by herself anyway, but [sic]. That's just not something that will ever happen." CP at 65. Wrice acknowledged that TLC did not have a psychiatrist in the community, but claimed she would "have everything set up." CP at 67.

Brown testified that she is a certified nursing assistant, and capable of assisting TLC with his diabetes care. Brown had no concerns regarding TLC living in the same home as her two daughters, and testified that TLC would not be alone with them. When asked if there was any medical equipment in place in the house to care for TLC, Brown replied that the house had a wheelchair ramp, which she believed was really all TLC required, and the appropriate equipment for TLC's diabetes care. CP at 77. When asked if she had a plan of what she would do if TLC's condition deteriorated, Brown replied, "If it does deteriorate, then we would address that at that time. But, he's capable now." CP at 78.

TLC testified that he would prefer to live with his family, and would allow his family to assist him with diabetes care "[i]f [he] nee[ed] it." CP at 83. TLC then confirmed that he was

having difficulties with his memory as he aged, and began, unprompted, discussing his work

history. TLC and respondent's counsel then had the following exchange on cross-examination:

COUNSEL: [TLC] has your treatment team talk[ed] to you about your diagnosis, like your mental health diagnosis?
TLC: Yes.
COUNSEL: Do you know what it is?
TLC: The—loss of memory.
COUNSEL: Okay. And so——
TLC: That's all I know.
COUNSEL: —have you—have they talked to you about Alzheimer's or dementia or anything?
TLC: Yeah, ah—they haven't talked to me about that, but I know about it. '[C]ause I hear it all the time; I've read about it. And everything.
COUNSEL: Do you think you have something like that?
TLC: No I don't think I have 'em.
COUNSEL: Okay. Do you think [you have] any kind of mental health diagnosis?
TLC: No.
COUNSEL: Okay. Do you think you need treatment for your mental health—
TLC: No.
COUNSEL: —any mental health diagnosis? Okay.
TLC: No.
COUNSEL: Do you think you need any kind of assistance?
TLC: Like what, sir?
COUNSEL: Like with making sure that you—you're able to care for yourself and—
TLC: Oh, you—you mean?
COUNSEL: —things like that.
TLC: Daily stuff?
COUNSEL: Sure.
TLC: Yeah. No, I don't need no help.
COUNSEL: All right.
TLC: I get up in the morning and take care of myself. Take showers and eat and everything all by myself.
COUNSEL: Okay. So do you think you—you need your—your daughter and your granddaughter—in-law to help you?
TLC: Yes.
COUNSEL: Okay.
TLC: I sure do.

CP at 85-87. TLC also testified that he was compliant with his medication and would continue

to take all medications prescribed to him.

No. 52797-9-II

At the conclusion of the hearing, the commissioner found TLC gravely disabled. The commissioner considered the family's testimony, stating that the family had made conclusory statements about caring for TLC, and that although it appeared they were getting ready to be able to meet TLC's needs, "those things all haven't been taken care of at this point in time." CP at 94. The commissioner granted the petition and entered the following relevant findings of fact and conclusions of law:

> **Findings of Fact**
>
> . . . .
>
> 2.    **Reason/s for Commitment.** Respondent suffers from a mental disorder. The diagnosis is Neurocognitive Disorder; R/O Alzheimer's or Related Dementia.
>
> **Is/Continues To Be Gravely Disabled and Respondent:**
>
>> [A]s a result of a mental disorder is in danger of serious physical harm resulting from the failure to provide for his/her essential needs of health or safety.
>
> . . . .
>
> **Conclusions of Law**
>
> . . . .
>
> 2.    **Detention Criteria.** The Respondent[,] as a result of a mental disorder:
>
>> [I]s/continues to be gravely disabled.

CP at 27-31. TLC then sought revision of the commissioner's order.

The superior court judge who heard TLC's motion to revise denied the motion, finding that TLC was gravely disabled and would be best served by a less restrictive alternative placement, stating, "[TLC's family] were not prepared to the degree that I will not see him as gravely disabled." Verbatim Report of Proceedings (VRP) at 20.

5

The superior court remanded the case back to the commissioner for entry of an order discharging TLC to a less restrictive placement, with an oral preference for placement in Wrice's home. On remand, a commissioner entered an order discharging TLC to Wrice's home as a less restrictive placement, including conditions for ongoing psychiatric care, medication management, and a transition plan for the expiration of the commitment order.

TLC appeals the superior court's finding that he was gravely disabled.

ANALYSIS

TLC argues that substantial evidence does not support that trial court's finding that he was substantially disabled. The State disagrees. We hold that substantial evidence supports the trial court's finding that TLC was gravely disabled.

A.      *Standard of Review*

On an appeal from the decision of a superior court revising a superior court commissioner's order, we review the superior court's decision, not the commissioner's order. *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). In matters concerning the persuasiveness of the evidence, witness credibility, and conflicting testimony, we defer to the trier of fact. *Knight v. Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

We review a trial court's finding that an individual is gravely disabled, as defined in former RCW 71.05.020(22) (2018), to determine if the finding is supported by "substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing." *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). Substantial evidence is "'evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'" *In the Matter of the Det. of A.S.*, 91 Wn. App. 146, 162, 955 P.2d 836 (1998)

(quoting *Holland v. Boeing Co.*, 90 Wn. 2d 384, 90, 583 P.2d 621 (1978)). When the State is required to prove its case by clear, cogent, and convincing evidence, the fact at issue must be shown by evidence to be "'highly probable.'" *LaBelle*, 107 Wn.2d at 209 (quoting *In the Matter of the Interest of Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984)).

B. *Substantial Evidence Supports the Superior Court's Finding that TLC Is Gravely Disabled*

TLC argues that substantial evidence does not support the superior court's finding that he is gravely disabled, because his family was willing and able to help him provide for his essential needs of health and safety. We disagree.

Under RCW 71.05.320(1)(c)(ii), .320(1)(d), an individual may be detained for involuntary treatment for up to 180 days if the individual is determined to be gravely disabled. In this case, TLC was determined to be gravely disabled under former RCW 71.05.020(22)(a), which defines "gravely disabled" as:

> [A] condition in which a person, as a result of a mental disorder, or as a result of the use of alcohol or other psychoactive chemicals: (a) [i]s in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety.

This definition does not require that the danger of serious physical harm be "imminent," but "the State must present recent, tangible evidence of failure or inability to provide for such essential human needs as food, clothing, shelter, and medical treatment which presents a high probability of serious physical harm within the near future unless adequate treatment is afforded." *LaBelle*, 107 Wn.2d at 203, 204-205.[1]

---

[1] Interpreting former RCW 71.05.020(1)(a), which is identical to former RCW 71.05.020(22)(a)—the statute at issue in this matter. *LaBelle*, 107 Wn.2d at 202.

TLC argues that, under *LaBelle*, the support of family and friends must be considered when a court makes a determination that a person is gravely disabled, and that, if the help of family and friends makes an individual not in danger of serious physical harm, that person cannot be found to be gravely disabled. TLC cites our Supreme Court's quotation of *O'Connor v. Donaldson*, 422 U.S. 563, 576, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975), which held that "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." Here, however, both the commissioner and the superior court did consider that TLC would have the assistance of his family members, they just did not find that assistance to be adequate to prevent TLC from being in danger of serious physical harm. In effect, TLC is inviting us to reweigh the evidence presented to the trial court, which we will not do. *Richardson v. Dep't of Labor & Industries*, 6 Wn. App.2d 896, 908, 432 P.3d 841 (2018).

The State presented witness testimony from TLC's doctor that TLC required prompting to perform activities of daily living such as hygiene, obtaining food, and taking medication. Dr. Slone explicitly testified that he did not believe TLC to be capable of managing his diabetes care, and noted that TLC refused to believe that he had a neurocognitive disorder. When questioned, TLC's family members could not provide specific plans for tasks like ensuring TLC received continued mental health support or maintaining his medications. When the superior court weighed the testimony from TLC's family and TLC's doctor, it explicitly found that "[TLC's family] were not prepared to the degree that I will not see him as gravely disabled." VRP at 20. The superior court then remanded the case back to a commissioner, who issued an order releasing TLC to his family's care, supported by an assigned care coordinator and supplemented

by conditions for ongoing psychiatric care, medication management, and a transition plan for the expiration of the commitment order.

As stated above, we defer to the trier of fact for determinations of persuasiveness of the evidence, witness credibility, and conflicting testimony. *Knight*, 178 Wn. App. at 937. Accordingly, we hold that the superior court could reasonably have found by clear, cogent, and convincing evidence that TLC was gravely disabled under former RCW 71.05.020(22)(a). Thus, the superior court's finding that TLC was gravely disabled is supported by substantial evidence.

We hold that substantial evidence supports the trial court's finding that TLC was gravely disabled. Thus, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

_____
J  , C.J.

_____
Sutton, J.