IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DENNIS R. ODOM, | ) | No. 38659-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TYSON FOODS, INC., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Tyson Foods, Inc. appeals a superior court

judgment ordering Dennis Odom's industrial insurance claim reopened. Tyson argues

there is insufficient evidence to show a causal relationship between the industrial injury

(back sprain) and the subsequent disability (herniated disc). We disagree and affirm.

FACTS

In 2011, Mr. Odom sustained an industrial injury while working for his self-

insured employer, Tyson Foods, Inc. Specifically, he sprained his lower lumbar spine

after picking up 80-pound bags of concrete and pouring them into a mixer.

Mr. Odom received chiropractic treatment for his injury and was referred to Dr.

Janmeet Sahota, a practicing board-certified spine surgeon. In 2014, Mr. Odom attended

an independent medical examination (IME) performed by Dr. Dennis Chong on behalf of Tyson.

In January 2015, the Department of Labor and Industries closed Mr. Odom's claim. After closure of his claim, Mr. Odom's back pain continued to worsen and he began to experience new nerve pain. Accordingly, Dr. Sahota updated Mr. Odom's diagnosis to a disc herniation and spinal stenosis.

In 2016, Dr. Sahota performed a three-level lumbar fusion surgical procedure on Mr. Odom to address the new diagnosis. In 2018, Mr. Odom applied to reopen his claim, with the assistance of Dr. Sahota, based on his continuing back pain. Later that year, Mr. Odom attended another IME on behalf of Tyson, performed by Dr. Paul Reiss. The Department later denied Mr. Odom's application to reopen his claim.

*Appeal to the Board of Industrial Insurance Appeals*

Mr. Odom appealed the Department's decision to the Board of Industrial Insurance Appeals (Board). An industrial appeals judge heard live testimony from Mr. Odom and his wife and considered the deposition testimonies of Dr. Sahota, Dr. Chong, and Dr. Reiss.

Mr. Odom testified that his back pain continued to get worse after closure of his claim to the point where he struggled with tasks such as carrying groceries. Similarly,

Mrs. Odom testified that her husband seemed to worsen after the claim was closed as evidenced by him not being able to do the things he had been doing prior to the injury, such as gardening or work around the house. She explained that her husband's condition deteriorated to the point that he could not do anything after the claim closed, but just prior to having the surgery.

Dr. Sahota testified that he saw and treated Mr. Odom after the initial injury and approximately nine times between 2012 and 2014. He had obtained a magnetic resonance imaging (MRI) of Mr. Odom each year between 2012 through 2015. Dr. Sahota explained that his initial treatment aimed to address Mr. Odom's lower back pain but noted that there had always been some unexplained leg pain that was worse on Mr. Odom's left side. Dr. Sahota testified that the supine MRI posture, where a person is laying down, would not have caught the pressure on the nerve until the disc reached a tipping point. "It was only when the disc got worse that we could see the reason why [Mr. Odom] was hurting more on the left than right. So I think the injury happened, he was having the worst pain on the left because that's where the disc was injured. And it just took time for it to get bad enough for us to see it." Clerk's Papers (CP) at 175.

After the initial injury, Dr. Sahota recommended nonoperative care. But after MRIs in 2014, 2015, and 2016 showed progressive worsening in Mr. Odom's lower back

as confirmed by three radiologists, Dr. Sahota recommended surgery.  Dr. Sahota

confirmed finding a herniated disc in a preoperative MRI and while performing the

lumbar fusion surgery on Mr. Odom.  Based on his continuing treatment of Mr. Odom,

his review of the MRIs, and his confirmation of the findings during surgery, Dr. Sahota

opined that Mr. Odom's worsening to a herniated disc was caused by his initial injury in

2011.

> [Counsel for Mr. Odom:]  And the need for that surgery was ultimately, the original industrial injury of 2011 was ultimately a proximate cause for that need of surgery in 2016?
>
> [Dr. Sahota:]  Right, because that original injury, at least the way I see it now it's kind of clear, you know, he had that disc protrusion and the instability at L3-4.  It was just causing back pain.  So there wasn't a reason to, you know, be aggressive with surgery because his nerve function was, you know, not compromised or progressively being compromised but then when the disc finally gave out and caused pressure on the nerve and the nerve resulted in loss of muscle function and atrophy that's when we were forced into it.  So it was just a worse version of what the initial problem was, same level, same disc, same side, just a worse version of it.

CP at 189-90.

Dr. Chong testified about his 2014 examination of Mr. Odom on behalf of Tyson.

Based on the examination and his review of imaging from 2013 and 2014, Dr. Chong

diagnosed Mr. Odom with a degenerative disease in his lumbar spine and spondylosis but

opined that neither was caused or aggravated by the initial lumbar spine sprain.  Dr.

Chong testified that a 2012 MRI of Mr. Odom's lumbar spine, taken just six weeks after

the initial injury, did not show evidence of an acute injury pattern, which he opined would be expected if there was an acute injury. Dr. Chong concluded that Mr. Odom's worsening was not related to his initial injury but instead due to natural degenerative spinal conditions.

Dr. Reiss testified regarding his 2018 examination of Mr. Odom on behalf of Tyson. Dr. Reiss is a retired spinal surgeon who last conducted a spinal surgery in the late 1980s. Dr. Reiss concluded that Mr. Odom had preexisting multilevel lumbar spine degenerative disc disease and spondylosis that were not related to the initial injury.

Dr. Sahota was unaware of any intervening event that could have caused the worsening and remained confident in his opinion after reviewing Tyson's IME reports and imaging. Dr. Sahota noted that Mr. Odom's nicotine use slowed his healing after surgery but that it did not relate to the worsening from the initial injury. He disagreed with Dr. Reiss's conclusion that natural degenerative problems caused the worsening and instead explained that it took time to see that the herniated disc was tied to the initial injury.

The industrial appeals judge entered a proposed decision and order affirming the Department's denial of Mr. Odom's application to reopen his claim. The judge found that Mr. Odom had not shown a proximate causal relationship between his initial injury and

his subsequent disability.  Mr. Odom subsequently petitioned the Board to review the

proposed decision and order, which the Board denied.

*Appeal to Superior Court*

Mr. Odom timely appealed the Board's order to the Franklin County Superior

Court.  The superior court held a bench trial on the appeal.  After conducting a de novo

review of the Board's decision, the superior court entered an order in favor of Mr. Odom,

reversing the decision of the Board.  The court explained its decision and reasoning in its

order:

> Mr. Odom seeks to have his case reopened due to aggravation of his
> condition.  To establish that Mr. Odom is in need of further treatment
> because of aggravation, he has the burden of proving by medical testimony
> that the aggravation resulted in a need for treatment, that the need for
> treatment was proximately caused by Mr. Odom's November 13, 2011
> industrial injury, and that that aggravation occurred between the date of
> January 15, 2015 and June 22, 2018.  Specifically, that Mr. Odom's
> November 13, 2011, industrial injury which in a direct sequence produced
> his worsening degenerative disc disease and resulting surgery.
>     The court found the testimony and long-term treating physician,
> Janmeet Sahota, D.O. to be more persuasive than that of the IMEs from
> Dennis Chong, M.D. on March 7, 2014, and Paul Reiss, M.D. on May 30,
> 2018.  Therefore, this courts finds that Mr. Odom objectively worsened
> between January 15, 2015 and June 22, 2018 and that worsening was
> proximately caused by [the] original industrial injury.  Furthermore, the
> Department of Labor and Industries should reopen Mr. Odom's claim for
> reasonable and necessary treatment.

No. 38659-7-III
*Odom v. Tyson Foods*

CP at 57-58.  The superior court later entered its findings of fact, conclusions of law, and judgment in the case.  Relevant here are findings of fact 3 and 4:

3.    Mr. Odom's conditions proximately caused by the industrial injury objectively worsened between January 15, 2015 and June 22, 2018.

4.    The Board of Industrial Insurance Appeals was incorrect in its determination that Mr. Odom's industrially related conditions did not worsen between January 15, 2015 and June 22, 2018.

CP at 61.  From these findings, the superior court concluded that:

3.    The Decision and Order of the Board of Industrial Insurance Appeals dated June 27, 2019 is incorrect and is reversed.

4.    The Department order [dated] June 22, 2018 is incorrect and is reversed.

5.    This matter is reversed and remanded to the Department of Labor & Industries with instructions to the Department of Labor & Industries to issue an order which reopens Mr. Odom's industrial injury claim and establishes that his work-related conditions objectively worsened between January 15, 2015 and June 22, 2018.

CP at 61.  Tyson timely appeals.

ANALYSIS

Tyson contends the superior court erred in finding that Mr. Odom's initial lumbar sprain objectively worsened to a herniated disc.  We disagree.

7

No. 38659-7-III
*Odom v. Tyson Foods*

*Standard of Review*

The Industrial Insurance Act, Title 51 RCW, governs judicial review of the decision to deny the application to reopen the industrial injury claim. *Rogers v. Dep't of Lab. & Indus.*, 151 Wn. App. 174, 179, 210 P.3d 355 (2009). In an appeal to the superior court, the board's decision is prima facie correct. *Id*. at 180; RCW 51.52.115. The superior court acts in an appellate capacity and reviews the decision of the board de novo solely on the evidence and testimony presented to the board. *Leitner v. City of Tacoma*, 15 Wn. App. 2d 1, 11, 476 P.3d 618 (2020), *review denied*, 196 Wn.2d 1045, 481 P.3d 553 (2021); *see also Ruse v. Dep't of Lab. & Indus.*, 138 Wn.2d 1, 5-6, 977 P.2d 570 (1999). The superior court is at liberty to disregard board findings and decisions that are supported by substantial evidence if the court finds that other substantial evidence is more persuasive. *Leitner*, 15 Wn. App. 2d at 11.

On an appeal of an industrial insurance claim from the superior court, we review the superior court's decision, not the board's order. *Id.* at 12; RCW 51.52.140. We review the record to determine whether substantial evidence supports the findings of fact made after the superior court's de novo review and whether the court's conclusions of law flow from the findings. *Leitner*, 15 Wn. App. 2d at 12. "Substantial evidence" is evidence sufficient to persuade a rational fair-minded person that the premise is true.

8

*Richardson v. Dep't of Lab. & Indus.*, 6 Wn. App. 2d 896, 903, 432 P.3d 841 (2018).

We do not substitute our judgment for that of the superior court, weigh the evidence or

the credibility of witnesses, or apply a new burden of persuasion. *Hendrickson v. Dep't*

*of Lab. & Indus.*, 2 Wn. App. 2d 343, 352, 409 P.3d 1162 (2018). We view the record in

the light most favorable to the party who prevailed in superior court. *Id.*

*Applicable Law*

RCW 51.32.160(1)(a) allows an industrial insurance claim to be reopened for

aggravation of a condition proximately caused by an industrial injury or of an

occupationally related condition. Workers seeking to reopen their claims under this

provision must establish the following four elements:

> "(1) The causal relationship between the injury and the subsequent disability must be established by medical testimony.
>
> (2) The claimant must prove by medical testimony, some of it based upon objective symptoms, that an aggravation of the injury resulted in increased disability.
>
> (3) [The] medical testimony must show that the increased aggravation occurred between the terminal dates of the aggravation period.
>
> (4) A claimant must prove by medical testimony, some of it based upon objective symptoms which existed on or prior to the closing date . . ., that his disability on the date of the closing order was greater than the [Department] found it to be."

9

*Eastwood v. Dep't of Lab. & Indus.*, 152 Wn. App. 652, 657-58, 219 P.3d 711 (2009) (some alterations in original) (footnote omitted) (quoting *Phillips v. Dep't of Lab. & Indus.*, 49 Wn.2d 195, 197, 298 P.2d 1117 (1956)).

*Medical Causation*

Tyson, focusing on the first element, argues Mr. Odom failed to show a causal relationship between the industrial injury and his subsequent disability. A "causal relationship" in this context means that the disability "was the result of the injury [that] was the basis of [the] original claim . . . and was not due to the ordinary progression of a disease from which [the worker] suffered independently of the injury." *Tonkovich v. Dep't of Lab. & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948) (quoting *Nagel v. Dep't of Lab. & Indus.*, 189 Wash. 631, 636-37, 66 P.2d 318 (1937)). As explained below, Dr. Sahota's testimony sufficiently established the required causal relationship.

At the time of his deposition, Dr. Sahota was a currently practicing orthopedic surgeon who had seen Mr. Odom nine times after the initial injury between 2012-2014 and continued to see him for therapy and testing. After a series of MRIs in 2014, 2015, and 2016 showed worsening in Mr. Odom's lower back, as confirmed by three outside radiologists, Dr. Sahota recommended surgery. He explained that the dramatic worsening

shown in the MRIs taken in 2014, 2015, and 2016 could only be attributed to the initial

injury.  He explained:

> [Counsel for Mr. Odom:]  Dr. Sahota, at the time of closure, January 15, 2015 date that we keep referring to, there was no indication or need for surgery, at least by your review and examination, is that accurate?
> [Dr. Sahota:]  That's correct.
> [Counsel for Mr. Odom:]  So the need and plan for surgery came between that closure date and 13, 14 months after that?
> [Dr. Sahota:]  Right.  When [Mr. Odom] developed that loss of neurologic function in his left leg that's really what pushed us into that corner of needing to do the surgery.
> [Counsel for Mr. Odom:]  And as a result of those findings, the need for that three level fusion would be considered necessary and proper treatment for those findings?
> [Dr. Sahota:]  Yes, I don't think it was something that [Mr. Odom] needed in [2015], but definitely by the time we got into the middle of [2015] and definitely early [2016], the function he was losing that was the reason for the surgery.
> [Counsel for Mr. Odom:]  And the need for that surgery was ultimately, the original industrial injury of 2011 was ultimately a proximate cause for that need of surgery in 2016?
> [Dr. Sahota:]  Right, because that original injury, at least the way I see it now it's kind of clear, you know, he had that disc protrusion and the instability at L3-4.  It was just causing back pain.  So there wasn't a reason to, you know, be aggressive with surgery because his nerve function was, you know, not compromised or progressively being compromised but then when the disc finally gave out and caused pressure on the nerve and the nerve resulted in loss of muscle function and atrophy that's when we were forced into it.  So it was just a worse version of what the initial problem was, same level, same disc, same side, just a worse version of it.

CP at 188-90.

11

No. 38659-7-III
*Odom v. Tyson Foods*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____          _____
Fearing, J.                                                   Pennell, J.

12