# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| THOMAS J. YOUNG, N.D., D.C., | No. 55859-9-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| DEPARTMENT OF LABOR & INDUSTRIES, STATE OF WASHINGTON, | |
| Respondent. | |

MAXA, J. – Dr. Thomas Young, a naturopathic doctor, appeals the superior court's judgment affirming the decision of the Board of Industrial Insurance Appeals (Board) that affirmed the order of the Department of Labor and Industries (DLI) revoking his authorization to treat injured workers, suspending him from the DLI provider network, and terminating his provider network agreement.

In orders issued in August and September 2015, DLI notified Young that it was removing him from the DLI provider network after (1) learning that Young had surrendered his United States Drug Enforcement Administration (DEA) registration while under investigation for his controlled substances prescribing activities, (2) receiving information that the Washington Department of Health (DOH) had placed Young on probation for prescribing controlled substances that fell outside the scope of his naturopathic license, and (3) determining that Young had failed to meet several minimum provider network standards. DLI entered an order denying

Young's request for reconsideration in January 2016. An industrial appeals judge (IAJ) affirmed the January 2016 order, and the Board adopted the IAJ's proposed decision and order as its final order.

We hold that (1) the superior court did not err in concluding that a January 2015 settlement agreement between DLI and Young to resolve an audit into Young's billing practices in which DLI agreed not to conduct retrospective audits was limited to billing and billing audits and therefore did not prevent DLI from removing Young from its provider network, (2) the superior court did not err in concluding that Young's surrender of his DEA registration and DOH placing Young on probation both were grounds for terminating his provider network agreement, (3) Young's numerous challenges to DLI's, the Board's, and the superior court's decisions have no merit or are not subject to review under RAP 10.3 because Young provides an insufficient basis for his claims, and (4) the removal of Young from DLI's provider network was not unconstitutional.

Accordingly, we affirm the superior court's judgment affirming the Board's order affirming DLI's January 2016 order.

## FACTS

*Background*

Young is a licensed naturopathic physician and licensed chiropractor who primarily treats injured workers. Naturopaths can prescribe certain drugs that are not controlled substances but still require a prescription. If naturopaths would like to be licensed to prescribe certain controlled substances, they must apply for a DEA registration number. Young applied for a DEA registration number that limited his prescribing authority to schedule III, IV, and V controlled substances, which the DEA approved.

In 2012, Young applied and was approved to be included in DLI's provider network. When Young signed his provider network agreement, he agreed to provide injured workers with treatment that complied with Washington law and DLI rules and policies. Young also agreed that DLI could terminate his provider network agreement if he did not meet the provider network standards in WAC 296-20-01030 and WAC 296-20-01040, if DLI found a risk of harm to patients pursuant to WAC 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, or if he violated a material term of the provider network agreement.

*DLI Billing Investigation and Audit*

In December 2013, DLI opened an investigation and audit of services billed by Young. In May 2014, DLI's Provider Fraud Program issued Young an order and notice regarding the billing investigation and audit. The May 2014 order explained that based on an investigation and audit of services billed between July 1, 2012 and November 30, 2013, DLI had found that Young had (1) billed for and was paid for extended naturopathic office visits without submitting documentation that supported the level of services billed and (2) failed to provide supporting documentation to DLI to substantiate the level of services he billed.

The May 2014 order stated that Young had violated RCW 51.48.260, liability of persons unintentionally obtaining erroneous payments, and WAC 296-20-125, billing procedures. The order stated as a result, that DLI was terminating Young's authorization to be paid for services provided to injured workers and specified an amount that Young owed to DLI. The accompanying provider audit and investigation report stated that the medical necessity or quality of care provided to injured workers were not reviewed as part of the audit.

In January 2015, DLI and Young entered into a settlement agreement to resolve the May 2014 order. As part of the settlement agreement, DLI agreed to (1) not revoke Young's provider

number and to not report Young to the National Practitioner Databank (NPDB) unless he failed to comply with the terms of the settlement agreement, and (2) "not conduct retrospective audits of any time period prior to the effective date of this settlement." 4 Administrative Record (AR) at 108.

*DEA Investigation*

At some point, the DEA received notification from the State Naturopathic Board that the Naturopathic Board was investigating Young for prescriptions written for drugs that he was not licensed to prescribe as a naturopath. As a result, the DEA reviewed the prescription monitoring program for Washington and discovered that Young had prescribed 101 prescriptions outside the scope of his DEA license between February 2012 and January 2014.

In March 2014, DEA investigator Heather Achbach and her colleague visited Young at his clinic and informed him that they had discovered that he had prescribed controlled substances that he was not authorized to prescribe. They told Young that they were giving him the opportunity to voluntarily surrender his DEA registration number in lieu of administrative proceedings and left him with a copy of DEA's voluntary surrender of controlled substances privileges form for his review. Young admitted to writing the 101 prescriptions at issue.

A few days later, Young agreed to sign DEA's voluntary surrender of controlled substances privileges form, which stated that he understood that his DEA registration would be terminated. The DEA categorized Young's voluntary surrender as a surrender for cause because there were probable reasons to initiate administrative proceedings to revoke a registration if he had refused to sign a voluntary surrender.

*DOH Investigation*

In February 2014, the DOH issued a statement of charges against Young after receiving complaints from a pharmacist and an advanced registered nurse practitioner about his controlled substances prescription activities.

In September 2014, the DOH and Young entered into an agreed order regarding the DOH statement of charges regarding his prescribing activities. Young stipulated to the fact that he had prescribed a number of controlled substances to 10 patients that went beyond the authorized scope of his naturopathic physician license between January 2012 and December 2012. Young agreed in the order that he committed unprofessional conduct in violation of RCW 18.130.180(7) and (12), RCW 18.36A.020(10), RCW 18.36A.040, and WAC 246-836-210.

As part of the terms of the order, Young agreed that (1) DOH would monitor his naturopathic physician license for at least 30 months, (2) he would surrender his DEA license to the DEA and would not prescribe any controlled substances during the 30 month monitoring period, and (3) he would not apply for a DEA registration number to prescribe any controlled substances until all the terms and conditions of the DOH agreed order were met and completed. The order stated that "[t]he disciplining authority determined that a period of probation and restriction of prescribing authority will serve to protect the health, safety, and welfare of the public." 6 AR at 19. By the time Young had entered into the DOH agreed order, he already had surrendered his DEA registration for at least six months.

*DLI Order Terminating Young's Provider Network Agreement*

At some point, DOH sent DLI a copy of the September 2014 agreed order regarding Young's out-of-scope prescribing activities. In January 2015, the DLI provider network credentialing compliance committee reviewed the DOH agreed order, along with past DOH

disciplinary actions. Dr. Randal Franke, DLI's associate medical director, decided to conduct peer reviews of Young's patients' medical records.

Dr. David Folweiler, a chiropractor, and Dr. Abid Haq, a board-certified occupational medicine physician, reviewed a sampling of Young's patient records to look at quality of care, appropriateness of care, documentation of care, and medical necessity in terms of meeting DLI minimum standard of care requirements and guidelines. Folweiler and Haq discovered several issues, such as poor quality of care provided, insufficient documentation of care, and failure to follow DLI guidelines for prescribing opioids.

In July 2015, the credentialing compliance committee recommended termination of Young's provider network agreement based on Young's DOH disciplinary history and Folweiler's and Haq's peer review findings.

In August 2015, Dr. Gary Franklin, the medical director of DLI, considered the credentialing compliance committee's termination recommendation and the materials that the credentials committee had reviewed. Franklin agreed with the recommendation based on Young's poor quality of care and his prescribing activities that went beyond the scope of his license.

On August 10, 2015, DLI issued an order and notice to Young regarding the termination. The August 2015 order stated that DLI had "suspended/revoked [Dr. Young's] authorization to treat injured workers in compliance with WAC 296-20-015, suspended [Dr. Young] from the provider network under WAC 296-20-01080 and terminated Dr. Young's provider agreement." 4 AR at 249. The order also informed Young that DLI's decision was effective 60 days from the date he received the order and notice unless he filed a request for consideration with DLI or filed an appeal with the Board.

The August 2015 order stated that DLI had authority under WAC 296-20-015 to terminate Young from the provider network on the grounds that DOH had placed his naturopathic physician's license under monitoring. The order also stated that the terms of Young's provider network agreement allowed DLI to terminate the agreement for failing to meet the provider network standards in WAC 296-20-01030 and specifically cited to nine different WAC provisions: WAC 296-20-01030(7), WAC 296-20-01030(7)(a), WAC 296-20-01030(7)(b), WAC 296-20-01050(3), WAC 296-20-01050(3)(a), WAC 296-20-01050(3)(j). WAC 296-20-01050(3)(*l*), WAC 296-20-01050(3)(o), and WAC 296-20-01050(3)(r).

Around September 17, DLI sent letters to Young's patients and the patients' attorneys informing them that Young was no longer enrolled in DLI's provider network and that he no longer could treat injured workers.

On September 25, 2015, DLI issued another order and notice that expressly stated that it was correcting and superseding the August 2015 order and notice. The September 2015 order was substantially the same as the August 2015 order, with the exception of an additional alleged violation, WAC 296-20-01030(8)(b). The September 2015 order stated that DLI could terminate the provider agreement under WAC 296-20-01030(8)(b), which states that the provider must not have surrendered his or her DEA registration while under investigation or because of findings resulting from the provider's conduct. The order again stated that it would become effective 60 days from the date of receipt unless Young filed a request for reconsideration or an appeal.

On September 28, Young filed a written request for reconsideration of the August 15, 2015 order. On October 7, Young filed a written request for reconsideration of the September 25, 2015 order.

On January 4, 2016, DLI issued an order and notice affirming its original decision to remove Young from the provider network. The January 2016 order informed Young that he no longer would receive any reimbursement from DLI for any ongoing treatment of injured workers and that DLI would be working with the injured workers to transition their care to appropriate network providers. The order also stated that DLI would be sending letters to his patients and that DLI was required to report his termination to the NPDB. The order stated that it was effective upon receipt, although it also stated that Young could appeal to the Board within 60 days.

Around January 12, DLI again sent out a number of letters to Young's patients and the patients' attorneys similar to the ones sent in September 2015, informing them that Young was no longer enrolled in DLI's provider network and that he no longer could treat injured workers.

In February 2016, Young filed an appeal of the January 2016 order with the Board. The Board agreed to hear Young's appeal and assigned his appeal to docket number 16 P1061.

*Young Motion to Stay*

Young filed a motion to stay the January 2016 order to prevent DLI from taking any immediate actions to deny payments and credentialing and to restore full privileges as a DLI provider pending completion of his appeal. Without addressing the merits of the January 2016 order, the IAJ granted Young's motion to stay based purely on procedural issues on May 26, 2016.

*DLI Petition for an Immediate Suspension*

On May 24, 2016, DLI filed a petition with the Board to immediately suspend Young's eligibility as a provider of services to injured workers under RCW 51.52.075. The Board assigned DLI's petition for an immediate suspension to docket number 16 P0001. The Board

8

subsequently issued an interlocutory order setting a briefing schedule and scheduling oral argument for September 9, 2016.

After considering the pleadings and oral argument, the Board on October 10, 2016 denied DLI's petition for an immediate suspension. The Board's October 2016 order found that DLI failed to meet its burden of proof to show good cause to believe that workers might suffer serious physical or mental harm if the Board did not grant the petition as required by RCW 51.52.075. On October 31, DLI sent a letter to Young reinstating him to payable status.

*IAJ Hearing and Proposed Decision*

An IAJ scheduled a hearing on Young's appeal of the January 2016 order to begin on September 28, 2016, before the Board issued its ruling on DLI's request for an immediate suspension.

Before the hearing before the IAJ, Young filed various motions in limine with the Board to exclude certain evidence and expert testimony. The IAJ reserved ruling on Young's motions in limine. The IAJ explained that it would revisit the motions after reviewing the entire record and would rule on them in the proposed decision and order.

At the hearing, the IAJ considered the entire record, testimony from multiple witnesses, including Young, and preservation depositions. Four former patients testified on Young's behalf, and DLI presented several witnesses. Pursuant to WAC 263-12-115(2)(a), Young was required to present his case first as the appealing party.

DEA investigator Achbach testified to the facts above regarding DEA's investigation into Young's controlled substances prescribing activities. She explained that DEA discovered that Young had written 101 prescriptions for controlled substances that fell outside the scope of his DEA license. She stated that Young voluntarily surrendered his DEA registration in lieu of

9

administrative proceedings. Achbach also testified that DEA classified Young's voluntary surrender as a surrender for cause because there was probable reason to initiate administrative proceedings to revoke his registration for violating the restrictions placed upon his license.

Paige Fury, a compliance officer in the DOH's office of legal services, generally testified to the facts above regarding DOH's statement of charges against Young and the 2014 agreed order entered between DOH and Young. She testified that at the time of the hearing, DOH was still monitoring Young and that his naturopathic license was classified as active with conditions.

DLI's medical expert witnesses included Haq; Folweiler; Franklin; Franke; Dr. Amber Figueroa, an osteopathic physician; Dr. Christian Dodge, a naturopathic physician; Dr. James Floyd, a physician and epidemiologist; and Dr. Ronald Rogers, a chiropractor. The medical expert witnesses generally testified to the facts above regarding Young's quality of care provided to injured workers and his lack of compliance with the minimum network standards and requirements.

In March 2017, the IAJ affirmed the January 2016 order in a lengthy proposed decision and order. The IAJ found that Young's surrender of his DEA registration, the DOH monitoring of Young's naturopathic license and practice, and his failure to meet minimum healthcare provider network standards all were grounds for termination from the provider network. The IAJ explained that in reaching this decision, it credited the testimony of DLI's experts over the testimony of Young and his former patients, and in particular credited the testimony of Dodge, the only naturopathic physician who reviewed Young's patient files.

The IAJ provided detailed summaries of the evidence relied upon and explained why Young did or did not meet the minimum standard provided in each WAC that DLI relied on.

The IAJ also made several specific findings of fact and conclusions of law that went into more detail regarding the grounds for her decision.

The IAJ's findings included the following:

9. Dr. Young's license was not free from restrictions, limitations, or conditions related to his clinical practice.

10. Dr. Young surrendered, voluntarily or involuntarily, his professional state license while under investigation or due to findings by the state resulting from the provider's acts, omissions, or conduct.

11. Dr. Young failed to meet minimum healthcare provider network standards.

12. Dr. Young was materially non-compliant with [DLI's] rules, administrative and billing policies, and evidenced-based coverage decisions and treatment guidelines and policies and other national treatment guidelines appropriate for his patients (based on severity, recency, frequency, repetition, or any mitigating circumstances).

13. Dr. Young was found to have committed negligence, incompetence, inadequate or inappropriate treatment, or lack of appropriate follow-up treatment which results in injury to a worker or creates unreasonable risk that a worker may be harmed (based on severity, recency, frequency, repetition, or any mitigating circumstances).

14. Dr. Young had informal licensure actions, conditions, agreements, or orders.

15. There are material complaints or allegations against Dr. Young demonstrating a pattern of behavior or misrepresentations including, but not limited to incidents, misconduct, or inappropriate prescribing of controlled substances (based on severity, recency, frequency, repetition, or any mitigating circumstances).

3 AR at 127-28.

In one of the findings of fact, the IAJ found that the January 2016 order affirmed the August 2015 order rather than the September 2015 order that superseded the August 2015 order.

The IAJ's conclusions of law included the following:

2. Dr. Young had a limitation on his naturopathic license within the meaning of WAC 296-20-015(5).
. . . .

11

4. Dr. Young's license was not free from restrictions, limitations or conditions related to his clinical practice within the meaning of WAC 296-20-01030(7)(a).

5. Dr. Young surrendered, voluntarily or involuntarily, his professional state license while under investigation or due to findings by the state resulting from the provider's acts, omissions, or conduct, within the meaning of WAC 296-20-01030(8)(b).

6. Dr. Young failed to meet minimum healthcare provider network standards within the meaning of WAC 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(3)(a).

7. Dr. Young was materially noncompliant with [DLI's] rules, administrative and billing policies and evidenced-based coverage decisions and treatment guidelines and policies and other national treatment guidelines appropriate for his patients (based on severity, recency, frequency, repetition, or any mitigating circumstances), within the meaning of WAC 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 (3)(j).

8. Dr. Young was found to have committed negligence, incompetence, inadequate or inappropriate treatment, or lack of appropriate follow-up treatment which results in injury to a worker or creates unreasonable risk that a worker may be harmed (based on severity, recency, frequency, repetition, or any mitigating circumstances), within the meaning of WAC 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(3)(1).

9. Dr. Young has informal licensure actions, conditions, agreements, or orders, within the meaning of WAC 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(3)(o).

10. There are material complaints or allegations against Dr. Young demonstrating a pattern of behavior or misrepresentations including, but not limited to incidents, misconduct, or inappropriate prescribing of controlled substances (based on severity, recency, frequency, repetition, or any mitigating circumstances), within the meaning of WAC 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(3)(r).

3 AR at 128-29.

*Board Review*

Young petitioned the Board for review of the IAJ's March 2017 proposed decision and order. In May 2017, the Board denied the petition and adopted the IAJ's proposed decision and order as its final order, with amendments regarding six clerical errors.

*Superior Court Proceedings*

Now representing himself,[1] Young appealed to the superior court the May 2017 Board decision affirming the January 2016 order. Young filed a motion to file an over-length opening brief, which the superior court denied. Young's opening brief included over 180 pages of exhibits and raised several arguments, including but not limited to allegations that the Board's findings of fact were not supported by substantial evidence, the Board breached his provider network agreement, the Board violated his due process rights, and that DLI's provider network was unconstitutional.

Young filed a motion to supplement the certified Board record with the records from the Board docket number 16 P0001, DLI's petition to immediately suspend Young. The superior court denied this motion.

At the start of oral argument, the superior court stated that it reviewed the record and briefing and would allow each side to have 45 minutes to make their arguments. Young did not object to the time restriction for oral argument.

The superior court affirmed the May 2017 Board decision and the January 2016 order. The court adopted the IAJ's and the Board's findings of fact with the exception of finding of fact 12. With regard to that finding, the court made the following additional finding:

> 16. This Court finds that the scope of the 2015 Agreed Order between [DLI] and Dr. Young was limited to billing and billing audits. [DLI's] peer review of Dr. Young that became a basis for [DLI's] January 4, 2016 Order that revoked Dr. Young's Provider Number and terminated his Provider Agreement did not violate the limited terms of the 2015 Agreed Order. The Court finds that the 2015 Agreed Order does not present a legal bar to the Board's January 4, 2016 Order terminating Dr. Young's Provider Agreement, except with regards to the sections that reference billing practices.

---

[1] Young originally retained counsel who represented him during the appeals process at the Board proceedings, but he began to represent himself at the superior court proceedings.

Clerk's Papers (CP) at 673-74.  Accordingly, the court amended the Board's finding of fact 12 to

delete the words "and billing" in the second line.

The superior court also made several additional findings

17.  This Court finds that the [IAJ] did not abuse her discretion at the Board by waiting to rule on Dr. Young's Motion in Limine until all the evidence was presented at hearing.  The [IAJ's] decision to wait to rule on motion in limine until all the evidence was presented was reasonable, not in error, and did not prejudice Dr. Young's case.

18.  This Court finds that the [IAJ] did not err in considering the evidence of medical experts that were offered as peer reviewers and peers of Dr. Young.  It was proper for the [IAJ] and the Board to consider these expert medical opinions who had practice experience and the Board appropriately weighed the testimony and experience of these experts with that of Dr. Young.

19.  This Court finds that the [IAJ] applied the appropriate burden of proof in accordance with RCW 51.5l.050.  The [IAJ's] determination after weighing all the evidence in this case that the preponderance of the evidence supported [DLI's] Order was not in error.

20.  This Court finds that the [IAJ] and Board process did not violate statute, regulation, or the constitution.  [DLI] appropriately communicated the basis of the [DLI] order to Dr. Young, he filed an appropriate notice of appeal before the Board, and had the full opportunity to litigate all issues raised in the [DLI] order.

21.  This Court find[s] that the [IAJ] and the Board erred in not admitting the October 10, 2016 order that denied [DLI's] petition for an order immediately suspending Dr. Young's ability to participate in the Provider Network and treat injured workers in accordance with RCW 51.52.075.  The Court admits the October 10, 2016 record as part of the Certified Appeals Board Record.

CP at 674.

Finally, the superior court adopted the IAJ's and the Board's conclusions of law with the

exception of modifying conclusion of law 7 to again delete the words "and billing."

As part of its judgment, the superior court awarded $200 in statutory attorney fees to

DLI.

Young appeals the superior court's judgment, findings of facts, and conclusions of law.

ANALYSIS

A.    APPLICABLE STATUTES AND REGULATIONS

In 2011, the legislature directed DLI to create a health care provider network and to establish minimum standards for providers who treat injured workers under the Industrial Insurance Act (IIA), title 51 RCW. LAWS OF 2011, ch. 6, § 1; *see* RCW 51.36.010(1).[2] Providers who apply and are allowed into the network are contractually obligated to follow DLI's treatment guidelines and policies and other national treatment guidelines appropriate for their patients. RCW 51.36.010(1), (2)(c). The director of DLI is authorized to audit the records of a health care provider in the network to ensure the adequacy of services rendered to injured workers. RCW 51.36.110(1).

Approved providers must meet and maintain the minimum health care provider network standards outlined in WAC 296-20-01030. Relevant here, a provider's "license, registration, or certification must be free of any restrictions, limitations or conditions relating to the provider's clinical practice." WAC 296-20-01030(7)(a). In addition, a "provider must not have surrendered, voluntarily or involuntarily his or her DEA registration in any state while under investigation or due to findings resulting from the provider's acts, omissions, or conduct." WAC 296-20-01030(8)(b). Providers also are required to "[m]aintain material compliance with minimum provider network standards, [DLI] credentialing and recredentialing standards, and [DLI's] evidence-based coverage decisions and treatment guidelines, policies; and must follow other national treatment guidelines appropriate for their patient." WAC 296-20-01040(3).

---

[2] Although RCW 51.36.010(1) has been amended since 2011, we cite to the current version because the amendments do not impact our analysis.

"If a provider fails to meet the minimum network standards established in subsection (2) of this section, [DLI] is authorized to remove the provider from the network or take other appropriate action regarding a provider's participation." RCW 51.36.010(6); *see also* WAC 296-20-01050(3)(a). And if there is "[a]ny temporary or permanent probation, suspension, revocation, or type of limitation of a practitioner's license to practice by any court, board or administrative agency," then DLI can "deny, revoke, suspend, limit, or impose conditions on a health care provider's authorization to treat workers under the [IIA]." WAC 296-20-015(5)(c); *see also* WAC 296-20-01050(3)(o).

B.      STANDARD OF REVIEW

In an industrial insurance case, the superior court reviews the issues de novo and only considers evidence and testimony included in the certified Board record. *Spohn v. Dep't of Labor and Indus.*, 20 Wn. App. 2d 373, 378, 499 P.3d 989 (2021); RCW 51.52.115. On appeal, we review the superior court's decision and order, not the Board's decision and order. *Spohn*, 20 Wn. App. 2d at 378; *see also* RCW 51.52.140. The rules governing civil appeals apply equally to the superior court's order. *Spohn*, 20 Wn. App. 2d at 378; RCW 51.52.140.

C.      EFFECT OF JANUARY 2015 BILLING AUDIT SETTLEMENT AGREEMENT

Young argues that the superior court erred in entering finding of fact 16, in which the court found that the January 2015 settlement agreement between DLI and Young related only to billing issues. Young claims that the settlement agreement precluded DLI from relying on his conduct or disciplinary actions taken by other agencies before January 2015. We disagree.

The superior court found in finding of fact 16 that

the scope of the [January] 2015 Agreed Order between [DLI] and Dr. Young was limited to billing and billing audits. [DLI's] peer review of Dr. Young that became a basis for [DLI's] January 4, 2016 Order that revoked Dr. Young's Provider Number and terminated his Provider Agreement did not violate the limited terms

16

of the [January] 2015 Agreed Order. The Court finds that the January 2015 Agreed Order does not present a legal bar to [DLI's] January 4, 2016 Order terminating Dr. Young's Provider Agreement, except with regards to the sections that reference billing practices.

CP at 673-74. Although denominated as a finding of fact, we will treat this finding as a conclusion of law because it involves contract interpretation. *See Kitsap County Consol. Hous. Auth. v. Henry-Livingston*, 196 Wn. App. 688, 697, 385 P.3d 188 (2016).

Young primarily argues that DLI breached the January 2015 settlement agreement when it issued the September 2015 order and notice regarding termination of his provider network agreement and removal from the provider network based on the following sentence in the settlement agreement: "[DLI] agrees it will not conduct *retrospective audits* of any time period prior to the effective date of this agreement." 4 AR at 245 (emphasis added). He claims that the sentence limited DLI from conducting *any and all* retrospective audits, including audits regarding the quality of care provided to his patients.[3] However, Young's argument ignores the plain language of the settlement agreement read in conjunction with the May 2014 order and notice and accompanying billing audit and investigation report.

First, the January 2015 settlement agreement's purpose section unambiguously provided that "[t]he parties enter into this Agreement *to resolve the order issued by [DLI] against Dr. Young dated May 29, 2014*." 4 AR at 107 (emphasis added). Consistent with the May 2014 order and notice, the purpose section further summarized that

---

[3] Young also claims that the scope of the May 2014 order and notice was not limited to a billing audit only because the order stated twice that he had 60 days to appeal, rather than 20 days. He apparently relies RCW 51.52.050(1), which states that absent an appeal, a DLI order and notice will become final within 60 days from the date the order is communicated but that an order regarding repayment of sums to DLI will become final within 20 days. We reject Young's argument because the time period that a party has to appeal an order and notice does not dictate or control the scope of the order and notice.

17

> [DLI's] May 29, 2014 order and notice alleges that Dr. Young: 1) billed and was paid for extended naturopathic office visits without submitting documentation to support the level of service billed, and 2) did not provide supporting documentation to [DLI] to substantiate billing. [DLI's] order directs Dr. Young to: 1) refund $25,871.33 for overpayments paid by [DLI] for services for dates of service July 2, 2012 through November 16, 2013; 2) pay interest of $3,239.13 through May 31, 2014; and 3) pay a penalty of $1,000 for two violations or failures to obey or comply with the rules as allowed under RCW 51.48.080.

4 AR at 107.

In addition, the settlement agreement's scope section stated, "This Agreement covers the May 29, [2014] Order and Notice issued by [DLI] against Dr. Young." 4 AR at 107. And the recitals section reiterated that "[t]he Parties wish to finally resolve and settle all matters in dispute between them *related to the order and notice dated May 29, 2014*." 4 AR at 107 (emphasis added).

Finally, DLI's May 2014 audit and investigation report explicitly stated that "[t]he medical necessity and quality of care provided to industrially ill or injured workers were not reviewed as part of this audit. . . . Because of the limited nature of the review, no implications as to the overall level of provider performance should be drawn solely from this report." 4 AR at 166. As a result, the January 2015 agreed order did not preclude DLI from terminating Young's provider network agreement and suspending his participation in the provider network for being materially noncompliant with DLI's rules.

We hold that the superior court did not err in ruling that the January 2015 settlement was limited to DLI's billing audit only and did not preclude the January 2016 DLI order revoking Young's authorization to treat injured workers, suspending him from the provider network, and terminating his provider agreement.

D.    GROUNDS FOR DLI DECISION

Young argues that the superior court erred in concluding that DLI was justified in removing him from its provider network based on (1) his surrender of his DEA registration, (2) the September 2014 agreed order between DOH and Young placing Young on probation and restriction, and (3) his failure to comply with minimum network standards. We disagree.

1.    Legal Principles

We review findings of fact for substantial evidence and rely on evidence presented to the Board in the light most favorable to the party who prevailed in the trial court. *Richardson v. Dep't of Labor & Indus.*, 6 Wn. App. 2d 896, 903, 432 P.3d 841 (2018). Substantial evidence exists when there is sufficient evidence to persuade a fair-minded person of the finding's truth. *Id.* We do not substitute our judgment for the superior court's judgment, weigh the evidence, or evaluate witness credibility. *Id.* When the superior court has weighed the evidence, we determine only whether substantial evidence supports the findings of fact, and if so, whether the findings support the superior court's conclusions of law. *Id.* We review the superior court's conclusions of law de novo. *Id.*

2.    Surrender of DEA License

Young assigns error to the superior court's findings of fact and conclusions of law that his surrender of his DEA registration was grounds for terminating his provider network agreement. We conclude that substantial evidence supports the superior court's findings of fact 1.2.5 and 1.2.10, which support conclusion of law 2.2.5.

As noted above, one of the minimum provider network standards under WAC 296-20-01030 involves DEA registration. WAC 296-20-01030(8) states:

> The provider must have a current Drug Enforcement Administration (DEA) registration, if applicable to the scope of licensure.

19

. . . .
> (b) The provider must not have surrendered, voluntarily or involuntarily his or her DEA registration in any state while under investigation or due to findings resulting from the provider's acts, omissions, or conduct.

Here, the superior court found in finding of fact 1.2.5 that under the provider agreement, "Dr. Young also agreed that [DLI] could terminate the Provider Agreement if Dr. Young no longer met the provider network minimum standards in WAC 296-20-01030." CP at 673.

The superior court found in finding of fact 1.2.10 that "Dr. Young surrendered, voluntarily or involuntarily, his DEA registration while under investigation or due to findings by the state resulting from the provider's acts, omissions, or conduct." CP at 673. And the court concluded in conclusion of law 2.2.5 that Young's surrender of his DEA registration number was within the meaning of WAC 296-20-01030(8)(b).

The record shows that Young agreed in his provider network agreement that DLI could terminate his agreement if he did not meet the provider network standards in WAC 296-20-01030. As a result, Young agreed that he would comply with WAC 296-20-01030(8)(b).

Achbach testified that in March 2014, DEA discovered in its investigation that Young had written 101 prescriptions for controlled substances that fell outside the scope of his DEA license. Achbach explained that Young was given the opportunity to voluntarily surrender his DEA registration in lieu of administrative proceedings. Both Achbach and Young testified that Young voluntarily surrendered his DEA registration because of the DEA's investigation. Achbach also explained that Young's voluntary surrender was classified as a surrender for cause because there was probable reason to initiate administrative proceedings to revoke his registration for violating the restrictions placed upon his license. Therefore, substantial evidence supports the findings that Young had surrendered his DEA registration as a result of DEA's investigation into his controlled substances prescribing activities.

20

Young relies on the first sentence of WAC 296-20-01030(8), which states that the provider must have a current DEA registration "if applicable to the scope of licensure." He claims that this provision is inapplicable to him because naturopaths are not required to have a DEA registration to be licensed to practice naturopathic medicine.

Although Young is correct that naturopaths in general can practice without a DEA registration, DLI's termination of Young from the provider network was not based on his lack of a DEA registration. The termination was based on the fact that his DEA registration was surrendered while he was under investigation under WAC 296-20-01030(8)(b). Subsection (8)(b) specifies as one of the network provider standards that "[t]he provider must not have surrendered . . . his or her DEA registration . . . while under investigation." In other words, *if a provider has a DEA registration* – which Young did – surrendering that registration while under investigation violates those standards.

We conclude that substantial evidence supports the superior court's findings of fact 1.2.5 and 1.2.10, and that those findings support the superior court's conclusion of law 2.2.5. We hold that the superior court did not err in affirming the May 2017 Board decision and order and the January 2016 DLI order based on the surrender of Young's DEA registration.

3.    DOH Restrictions on License

Young assigns error to the superior court's findings of fact and conclusions of law that his license was encumbered by restrictions or conditions in violation of several WACs and RCWs. We conclude that substantial evidence supports the superior court's findings of fact 1.2.4, 1.2.7, 1.2.9 and 1.2.14 regarding the limitations the DOH placed on Young's naturopathic license, which support the courts conclusions of law 2, 4, and 9.

21

As noted above, WAC 296-20-015(5)(c) allows DLI to revoke a provider's authorization to treat injured workers if there is "[a]ny temporary or permanent probation, suspension, revocation, or type of limitation of a practitioner's license to practice by any court, board or administrative agency." Similarly, one of the minimum provider network standards is that a provider's "license, registration, or certification must be free of any restrictions, limitations or conditions relating to the provider's clinical practice." WAC 296-20-01030(7)(a). And WAC 296-20-01050(3)(o) states that DLI may deny an application if "[t]he provider has informal licensure action, conditions, agreement, orders."

The superior court found:

4. In September 18, 2014, Dr. Young and [DOH] executed a document entitled Stipulated Findings of Fact, Conclusions of Law and Agreed Order ("Agreed Order'"). Per the Agreed Order, Dr. Young agreed that he [committed] unprofessional conduct in violation of RCW 18.130.180(7) and (12), RCW 18.36A.020(10), RCW 18.36(A).040, and WAC 246-836-210, as a result of these prescribing activities. Dr. Young agreed to have his credential to practice as a naturopathic physician monitored for 30 months. He also agreed to surrender his DEA registration authorizing the prescription of controlled substances, to the [DEA].
. . . .

7. Dr. Young had a limitation on his naturopathic license.
. . . .

9. Dr. Young's license was not free from restrictions, limitations, or conditions related to his clinical practice.
. . . .
14. Dr. Young had informal licensure actions, conditions, agreements, or orders.

CP at 672-73.

The superior court concluded,

2. Dr. Young had a limitation on his naturopathic license within the meaning of RCW 296-20-015(5).
. . . .

22

4.  Dr. Young's license was not free from restrictions, limitations, or conditions related to his clinical practice within the meaning of WAC 296-20-01030(7)(a).
. . . .

9.  Dr. Young has informal licensure actions, conditions, agreements or orders within the meaning of WAC 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(3)(o).

CP at 675.

Here, the record shows that Young entered into an agreed order with DOH in September 2014 about DOH's statement of charges regarding his unauthorized controlled substances prescription activities.  The agreed order specifically stated that "[t]he disciplining authority determined that a period of probation and restriction of prescribing authority will serve to protect the health, safety, and welfare of the public."  6 AR at 19.  In addition, Young agreed to comply with multiple provisions, including: (1) DOH shall monitor his credentials to practice as a naturopathic physician for at least 30 months, (2) he would surrender his DEA registration number and would not prescribe any controlled substances while being monitored by the DOH, (3) he would not apply for a DEA registration number until after all the terms and conditions of the agreed order were met and completed as approved by the Board, and (4) the Board would review his prescription activities quarterly.  In other words, the terms of the agreed order unambiguously placed restrictions and conditions on Young's license.

In addition, multiple witnesses testified about the impact of the September 2014 agreed order on Young's ability to practice naturopathic medicine and why the terms of the agreed order constituted as restrictions on his license.  Franke testified that the NPDB classified the DOH action as a limitation or restriction on Young's license.  And several expert witnesses testified that as a result of the September 2014 agreed order, Young was restricted from applying for a DEA registration and that the DOH monitoring requirement qualified as a condition and a restriction on Young's license.

As a result, substantial evidence supports the superior court's findings of fact and those findings support the conclusions of law regarding restrictions imposed on Young's license.

Young relies on WAC 296-20-01050(3)(c), which states that DLI may deny a provider's application if "[t]he provider is noncompliant with the department of health's . . . stipulation to informal disposition (STID), agreed order, or similar license restriction." However, this provision states only that DLI can deny any application if the applicant is noncompliant with a DOH stipulation. But the provision does not state that DLI *cannot* terminate a provider from the provider agreement if the provider is compliant with a DOH stipulation that places restrictions on the provider's license.

We conclude that substantial evidence supports the superior court's findings of fact 1.2.4, 1.2.7, 1.2.9 and 1.2.14 regarding the limitations the DOH placed on Young's naturopathic license and that those findings support the court's conclusions of law 2, 4, and 9. We hold that the superior court did not err in affirming the May 2017 Board decision and order and the January 2016 DLI order revoking Young's authorization to treat injured workers and terminating Young from the provider network based on the DOH probation.

4.    Minimum Network Standards

Young asserts various theories to argue that the superior court erred in finding that he was materially noncompliant with other minimum network standards, challenging multiple findings of fact and conclusions of law. We need not address these arguments.

As discussed above, substantial evidence shows that Young voluntarily surrendered his DEA registration and that there were restrictions on Young's license as a naturopathic physician. And both of these factors served as separate grounds for terminating Young from the provider network. Because we may affirm a superior court's decision based on any grounds supported by

the record, *Hoover v. Warner*, 189 Wn. App. 509, 526, 358 P.3d 1174 (2015), we need not address a third ground for the superior court's decision. Accordingly, we decline to address the merits of Young's other minimum network standards arguments.

E.    ADDITIONAL CLAIMS AND ARGUMENTS

Young makes numerous claims and arguments challenging DLI's, the Board's, and the superior court's decisions in his 183 page opening brief and his 55 page reply brief. We conclude that these challenges have no merit or are not subject to review under RAP 10.3(6) because Young provides an insufficient basis for his claims. To the extent that we do not specifically address each one of Young's claims, we have declined to address those claims under RAP 10.3.

1.    Failure to Comply With RAP 10.3

Litigants representing themselves are held to the same standard as an attorney and must comply with the rules of appellate procedure. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). RAP 10.3(a)(5) states that appellants should include references to the record in the "Statement of the Case" section. And RAP 10.3(a)(6) states that appellants should support all arguments with "citations to legal authority and references to relevant parts of the record."

Young asserts many procedural challenges to DLI's, the Board's, and the superior court's decisions. He also assigns error to nearly every paragraph, finding of fact, and conclusion of law in the superior court's judgment. However, Young often relies on conclusory statements that are not supported by any meaningful analysis, citations to the record, or relevant legal authority. Nor has Young included proper citations to the appellate record in the Statement of the Case section as suggested by RAP 10.3(a)(5).

We generally decline to consider an issue when the appellant has failed to provide meaningful argument. *Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 21, 408 P.3d 1123 (2017). " 'Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.' " *Samra v. Singh*, 15 Wn. App. 2d 823, 836, 479 P.3d 713 (2020) (quoting *Palmer v. Jensen*, 81 Wn. App. 148, 153, 913 P.2d 413 (1996)); *see also* RAP 10.3(a)(6). However, we will address the arguments that we are able to discern and that are supported by meaningful analysis.

2.   Timeliness of DLI's Reconsideration Order

Young argues that DLI's January 2016 order is void because DLI failed to provide a response to his request for reconsideration of the September 2015 order within 90 days as required by WAC 296-20-01090(4). We disagree.

WAC 296-20-01090(4) provides that "[DLI] will review the original decision, information supporting the original decision, the provider's reconsideration request and supporting documentation and will notify the provider of the status of its reconsideration decision within ninety days."

Young claims that his request for reconsideration was sent on September 28, 2015, and therefore DLI's January 4, 2016 order was filed more than 90 days later. However, Young's September 28 request for reconsideration related to the August 2015 order. As noted above, DLI's September 25, 2015 order superseded the August 2015 order. Young did not request reconsideration for the September 2015 order until October 7, 2015. The January 4, 2016 DLI order was issued within 90 days of that date and therefore was timely.

3.  Content of DLI January 2016 Order

    a.  Vagueness

Young argues that DLI's January 2016 order was vague and not specific. That order did not reference the September 2015 order, cite to any WACs, or otherwise explain the decision. However, the January 2016 order specifically stated, "Your request for reconsideration of [DLI's] decision to terminate your provider agreement was reviewed and [DLI's] original decision to terminate your provider agreement was confirmed." 4 AR at 295. This language was sufficient to inform Young of the nature of the decision, and the September 2015 order explained in detail the basis for the decision.

    b.  "Illegal" Language

Young argues that the January 2016 order contained language that violated RCW 51.52.050(1). That provision states that a DLI decision will become final within 60 days *unless* a request for reconsideration is filed or an appeal is filed with the Board. RCW 51.52.050(1). The January 2016 order stated, "This order is effective upon receipt," although the order stated that Young could appeal within 60 days. 4 AR at 295.

We agree that the January 2016 order erroneously suggested that the order was final immediately. However, Young has not explained why this erroneous language should somehow void DLI's January 2016 order, the Board's affirmance of the order, or the superior court's affirmance of DLI's and the Board's orders.[4]

---

[4] Young also claims that both the August 2015 and the September 15 orders contained illegal language. However, those order correctly stated that they would become effective in 60 days unless a request for reconsideration or an appeal was filed. Young does not identify what language in these orders was illegal.

4. Effect of May 2016 Stay Order

Young claims that the May 2016 order staying the January 2016 order voided the September 2015 order. However, the IAJ's stay order did not address the merits of Young's appeal of the January 2016 order. Young filed his motion to stay to prevent DLI from taking any immediate actions to deny payments and termination of his provider network agreement during the appeals process. The IAJ stated in its oral ruling that in granting Young's motion to stay, it was making "no determination on the actual merits here." 5 AR at 326. Therefore, the May 26, 2016 order staying the January 2016 DLI order did not void the September 2015 order.

5. DLI's Petition for Immediate Suspension

Young appears to argue that DLI's decision in May 2016 to file a petition to immediately suspend him under RCW 51.52.075 was improper and a violation of the appeals process. He claims among other things that the petition violated RCW 51.52.070, which states that matters not raised in the notice of appeal are waived, and RCW 51.52.115, which states that only those matters included in the notice of appeal may be raised on appeal. We disagree.

DLI was statutorily authorized to file a petition to immediately suspend Young. RCW 51.52.075 provides,

> When a provider files with the [Board] an appeal from an order terminating the provider's authority to provide services related to the treatment of industrially injured workers, [DLI] may petition the [Board] for an order immediately suspending the provider's eligibility to participate as a provider of services to industrially injured workers under this title *pending the final disposition of the appeal by the board*.

(Emphasis added.) DLI did not file its petition to immediately suspend Young until after Young filed an appeal with the Board regarding the January 2016 DLI order.

In addition, the petition for immediate suspension was not part of Young's appeal. The Board assigned a different docket number to the petition and the Board ruled on the

28

petition independent from the IAJ who conducted the appeal hearing. And as noted above, the ruling on the petition to immediately suspend Young's eligibility to participate as a provider did not address the merits of Young's appeal of the January 2016 order. Therefore, DLI's petition to immediately suspend Young was not a violation of the appeals process.

      6.    Timeliness of Board Hearing Regarding DLI's Immediate Suspension Petition

Young argues that the Board failed to expedite the immediate suspension proceeding as required by RCW 51.52.075. He claims that this failure prejudiced him because he was forced to begin the hearing on his appeal of the January 2016 order before the Board reached a decision regarding immediate suspension. We disagree.

RCW 51.52.075 states that if DLI petitions the Board for an order to immediately suspend a provider, then "[t]he [B]oard shall expedite the hearing of [DLI's] petition." The statute does not specify that a hearing must be held within a certain number of days.

Here, DLI filed its immediate suspension petition with hundreds of exhibits on May 24, 2016. The Board shortly thereafter issued an interlocutory order setting the briefing schedule and scheduling oral argument for September 9, 2016.

Setting oral argument three months after the original petition to immediately suspend Young complied with RCW 51.52.075 because it provided both Young and DLI sufficient time to (1) file a response brief and reply brief, respectively and (2) prepare for oral argument. Further, the Board was not required to rule on DLI's petition to immediately suspend Young before proceedings began in Young's appeal of the January 2016 order because they were independent proceedings.

7.    Effect of October 2016 Immediate Suspension Ruling

Young argues that the superior court erred when it failed to find that the doctrines of res judicata and collateral estoppel barred DLI from litigating the merits of its orders removing him from the provider network. He claims that the October 2016 Board order denying DLI's petition for an immediate suspension under Board docket number 16 P0001 was binding on the appeal of DLI's January 2016 order. We disagree.

Res judicata applies "when a plaintiff's claim against a party has been dismissed by final judgment in one action and the plaintiff asserts the same claim against the same party in a subsequent action." *Shandola v. Henry*, 198 Wn. App. 889, 902, 396 P.3d 395 (2017). The claims asserted in the two actions must be so similar that the current claim could have been litigated in the former action. *Id.*

Collateral estoppel applies when (1) the issue decided in the prior action is identical with the one presented in the current action, (2) the prior action ended in a final judgment on the merits, (3) the party against whom the doctrine is asserted was a party or in privity with a party in the earlier proceeding, and (4) application of collateral estoppel will not cause an injustice against the estopped party. *Weaver v. City of Everett*, 194 Wn.2d 464, 474, 450 P.3d 177 (2019).

Here, DLI filed a petition under RCW 51.52.075 to immediately suspend Young's eligibility as a provider pending the final disposition of Young's appeal of the January 2016 order. RCW 51.52.075 provides, "The [B]oard shall grant the petition if it determines that there is *good cause to believe that workers covered under this title may suffer serious physical or mental harm if the petition is not granted*." (Emphasis added.) Under Board docket number 16 P0001, the Board denied DLI's petition because it failed to meet its burden of proof under RCW 51.52.075.

In comparison, DLI's decision to remove Young from its provider network was not based on harm to patients. The primary issues regarding Young's appeal of the January 2016 order centered on whether (1) Young had surrendered his DEA registration while under investigation under WAC 296-20-01030(8)(b), (2) Young's license was encumbered with conditions and restrictions within the meaning of WAC 296-20-015(5)(c), and (3) Young failed to meet the minimum network standards as provided under WAC 296-20-01030 and WAC 296-20-01050(3). The Board's order denying DLI's petition for an immediate suspension did not address the merits of these issues.

Therefore, the Board's October 2016 immediate suspension ruling did not involve the same claim as Young's appeal for purposes of res judicata and did not decide an identical issue for purposes of collateral estoppel. We hold that neither res judicata nor collateral estoppel apply here.

8. IAJ Hearing – Procedural Issues

Young claims that there were a number of procedural errors in the IAJ hearing. We reject all of these claims.

a. Deferred Ruling on Motion in Limine

Young argues that the superior court erred in ruling that the IAJ did not abuse its discretion in waiting to rule on his motions in limine until all the evidence had been presented. However, although Young disagrees with the IAJ's decision, he does not show that the decision was erroneous or that it constituted an abuse of discretion.

b. Young Presenting Case First

Young claims that it was unfair that he had to present his case first before DLI presented its case. But this procedure is mandated by WAC 263-12-115(2)(a), which

states, "[T]he appealing party shall initially introduce all evidence in his or her case in chief."

   c. Refusal to Admit Records from Immediate Suspension Proceeding

Young argues that the IAJ erred in refusing to include materials from the immediate suspension proceeding in the appeal record. But as noted above, the immediate suspension proceeding involved completely different issues than Young's appeal. Young does not show that the IAJ erred in excluding these materials.

   d. Refusal to Admit the Board's October 2016 Ruling

Young argues that the IAJ erred in refusing to admit the Board's October 2016 ruling denying DLI's petition for an immediate suspension from its provider network. But the superior court ruled that the IAJ erred in not admitting this evidence, and admitted the ruling as part of the certified appeals Board record. We review the superior court's decision and not the Board's order. *Spohn*, 20 Wn. App. 2d at 378. Therefore, the superior court's admission of this document cured any error.

   e. Refusal to Admit October 31, 2016 Letter

Young argues that the IAJ erred in refusing to admit DLI's October 31, 2016 letter reinstating him to the provider network. He claims that this letter represented a concession that DLI's January 2016 order was erroneous. However, this letter cannot be interpreted as a concession. The letter merely reflected the fact that the January 2016 order had been stayed and the Board had denied DLI's request for an immediate suspension. Therefore, it was not relevant to Young's appeal and the IAJ did not err in excluding it.

f. Use of Preservation Depositions

Young argues that the IAJ erred in allowing DLI to present several witnesses through preservation depositions. He apparently claims that he was denied his ability to cross-examine these witnesses. However, WAC 263-12-117(1) expressly allows an IAJ to permit the perpetuation of testimony through deposition after considering four factors. Young does not explain how the IAJ's allowance of perpetuation depositions violated WAC 263-12-117(1). And Young does not explain why he was unable to cross-examine these witnesses at the depositions, as was his right.

Young also claims that the depositions were held improperly in Seattle rather than in Tacoma and that they addressed allegations outside the scope of the notice of appeal. But he fails to show any error.

9. Certified Board Record

Young claims that the superior court could not have reviewed the entire record because it refused to admit into the certified Board record (1) the entire record from Board docket number 16 P0001 and (2) the October 31, 2016 letter from DLI to Young. In other words, Young argues that the certified Board record was incomplete. We disagree.

RCW 51.52.115 provides,

Upon appeals to the superior court only such issues of law or fact may be raised as were properly included in the notice of appeal to the [B]oard, or in the complete record of the proceedings before the [B]oard. The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the [B]oard or included in the record filed by the [B]oard in the superior court.

As stated above, Board docket number 16 P0001 was a separate proceeding with different legal issues regarding DLI's petition for an immediate suspension filed under RCW 51.52.075. And Young does not dispute that the October 31, 2016 letter was not admitted to the record under

either Board docket numbers 16 P0001 and 16 P1061. Therefore, the superior court did not err by limiting its review to the certified Board record from Board docket number 16 P1061 as required by RCW 51.52.115.

10.    Peer Testimony

Young argues that the superior court applied an erroneous definition of the term "peer" and as a result, the superior court erred in relying on evidence from medical professionals who were not his peers in finding of fact 1.3.18. Specifically, he claims that none of the medical experts offered by DLI are qualified as his peers because they are not naturopathic physicians who were registered with the DEA and primarily treated injured workers.

Young does not identify the statute or regulation he is attempting to interpret. To the extent that he is interpreting the term "peer" within the context of RCW 51.36.010, we conclude that Young's argument has no merit.

RCW 51.36.010(7) provides,

[DLI] may permanently remove a provider from the network or take other appropriate action when the provider exhibits a pattern of conduct of low quality care that exposes patients to risk of physical or psychiatric harm or death. Patterns that qualify as risk of harm include, but are not limited to, poor health care outcomes evidenced by increased, chronic, or prolonged pain or decreased function due to treatments that have not been shown to be curative, safe, or effective or for which it has been shown that the risks of harm exceed the benefits that can be reasonably expected *based on peer-reviewed opinion*.

(Emphasis added.) Ignoring principles of statutory interpretation, Young merely defines "peer" in a manner that favors his argument. And the statutes and regulations that he relies on do not support his argument or explain who is qualified to provide expert opinion as a peer. Accordingly, we reject Young's argument.

11. Weight of Witness Testimony

To the extent Young argues that both the superior court and the Board failed to afford sufficient consideration and weight to his own testimony over DLI's witnesses, we decline to reweigh the evidence.

First, the issue of whether the Board erred in weighing the evidence falls outside the scope of our review. We review only the superior court's order, and regardless of how the Board weighed the evidence, the superior court reviewed the Board's order de novo. *Spohn*, 20 Wn. App. 2d at 378; RCW 51.52.115; RCW 51.52.140.

Second, Young essentially asks us to reweigh the evidence in his favor. But appellate courts are not permitted to reweigh the evidence or the credibility of witnesses. *Mangan v. Lamar*, 18 Wn. App. 2d 93, 95, 496 P.3d 1213 (2021). Nor do the cases that Young cites to support his argument.

12. IAJ's Reference to August 2015 Order

Young argues that DLI, the Board, and the superior court erroneously revived the August 2015 order that had been superseded by the September 2015 order. This argument is based on the IAJ's finding of fact 6, which stated that "[o]n August 10, 2015, [DLI] issued an order revoking Young's authorization to treat injured workers, suspending [Young] from the provider network, and terminating his Provider Agreement. The order was affirmed on January 4, [2016]." 3 AR at 127.[5] Both the Board and the superior court adopted this finding.

---

[5] The IAJ's finding of fact 6 actually stated that DLI's 2015 order was affirmed on January 4, *2026*. 3 AR 127. The Board failed to correct the year from 2026 to 2016 in its errata, but the superior court's finding of fact 1.2.6 stated the correct year.

However, we view this reference to the August 2015 order as akin to a scrivener's error. It is clear that the January 2016 DLI order affirmed the September 2015 order based on the fact that the September 2015 order expressly stated that it was superseding the August 2015 order. In other words, the August 2015 order became moot when DLI issued the September 2015 order.

In addition, the superior court concluded in conclusion of law 2.4 that it was affirming the January 2016 order "which affirmed the September 25, 2015 order that revoked Dr. Young's authorization to treat injured workers, suspended him from the Provider Network, and terminated his provider agreement."[6] CP at 675-76. Therefore, the superior court clearly affirmed DLI's September 2015 order, not the August 2015 order.

13. Miscellaneous Claims

Young references a number of other claims in his briefs.

a. DLI's Letters to Young's Patients

Young argues that DLI's letters to his patients and others in September 2015 and January 2016 informing them that Young had been removed from the provider network were improper because DLI's orders were not immediately effective under RCW 51.52.050(1). DLI relies on RCW 51.36.010(9), which provides:

> When [DLI] terminates a provider from the network, [DLI] or self-insurer shall assist an injured worker currently under the provider's care in identifying a new network provider or providers from whom the worker can select an attending or treating provider. In such a case, [DLI] or self-insurer shall notify the injured worker that he or she must choose a new attending or treating provider.

---

[6] Conclusion of law 2.4 misstates that the January 2016 order and notice was dated as January 6, 2016. We also note that under the judgment section, paragraph 3.1 misstates the January 2016 order and notice as January 1, 2016. The record shows that the correct date is January 4, 2016.

DLI's letters may have been improper. DLI ignores the fact that its removal of Young from the provider network could not become effective for at least 60 days under RCW 51.52.050(1) to give Young the opportunity to request reconsideration or appeal. However, even if these letters were improper, Young does not explain why that fact affects the validity of the September 2015 order and notice or the January 2016 order.[7]

b.    Hobbs Act Claim

Young argues that DLI violated the Hobbs Act, 18 U.S.C. § 1951. However, he provides no citations to the record or legal authorities, fails to explain why this court has jurisdiction, and does not provide any specific details about any alleged Hobbs Act violation. Therefore, we decline to address this argument under RAP 10.3(6). *See Samra*, 15 Wn. App. 2d at 836.

c.    Contract of Adhesion

Young argues that his provider network contract was void as a contract of adhesion and that this court should annul any application the contract has affected. But his argument and requested relief is illogical and moot because DLI already terminated his provider network agreement.

14.    Award of Statutory Attorney Fees

Young argues that the superior court erred in awarding DLI statutory attorney fees of $200. We disagree.

Young asserts that there is no provision in his provider network agreement that allows the superior court to award DLI a statutory attorney fee. But whether the provider network agreement contained a provision that allows for the imposition of attorney fees is immaterial. As

---

[7] We express no opinion as to whether Young has a separate cause of action for any damages associated with DLI's conduct.

stated above, the rules of civil procedure apply equally in all appeals to the superior court under the IIA. *Spohn*, 20 Wn. App. 2d at 378; RCW 51.52.140. RCW 4.84.010(6) provides that the prevailing party "shall be allowed" statutory attorney fees. RCW 4.84.080(1) limits attorney fees to $200. DLI was entitled to statutory attorney fees and costs as the prevailing party under fee statutes applicable to civil cases. *See Peterson v. Dep't of Labor and Indus.*, 17 Wn. App. 2d 208, 239-41, 485 P.3d 338 (2021).

Therefore, we hold that the superior court did not err when it awarded statutory attorney fees of $200 to DLI.

F.    CONSTITUTIONAL ARGUMENTS

      1.    Due Process Challenges

Young generally argues that DLI, the IAJ, the Board, and the superior court all violated his right to due process on various grounds. These grounds include violating the "statutory appeal algorithm," violating the May 2016 order to stay DLI's January 2016 order, requiring Young to present his case-in-chief first, limiting the length of oral argument, failing to punish DLI for filing a petition to immediately suspend Young in a separate Board proceeding, failing to supplement the certified Board record with all documents related to DLI's petition to immediately suspend Young, improperly weighing the evidence, and breach of contract. We decline to address the merits of his due process arguments due to his lack of compliance with RAP 10.3(5)-(6). *Samra*, 15 Wn. App. 2d at 836.

Here, Young generally fails to provide any meaningful constitutional analysis, fails to cite to the record, fails to develop an argument in support of his claims, misrepresents the record, or makes claims that are too incoherent to understand. Further, we decline to craft constitutional arguments for Young so we can address his claims. " '[N]aked castings into the constitutional

sea are not sufficient to command judicial consideration and discussion.' " *Crystal Ridge Homeowners Ass'n v. City of Bothell*, 182 Wn.2d 665, 679, 343 P.3d 746 (2015) (quoting *In re Pers. Restraint of Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)) (alteration in original). Merely repeating the facts of the case in the light most favorable to his argument does not qualify as actual analysis or argument.

To the extent Young argues that DLI failed to provide adequate notice of the statutes and regulations he allegedly violated in the January 2016 order, this argument has no merit. First, the January 2016 order stated that it was responding to Young's request for reconsideration of the September 2015 order, which identified every regulation that DLI alleged he violated and included copies of the WACs. Second, Young's request for reconsideration addressed why he had not violated any of the cited WACs in the September 2015 order. Therefore, Young was on notice as to the regulations that DLI alleged he had violated in the September 2015 order and the January 2016 order.

2. Provider Network

Young claims that the superior court erred when it failed to find that DLI's provider network is unconstitutional because it is in conflict with the legislature's intent. He argues that the provider network shifts the physician's owed duty of care from the injured worker to DLI. We decline to address the merits of Young's argument because he does not specify what constitutional grounds he relies on to challenge the provider network nor does he provide any substantive constitutional analysis. *See Crystal Ridge Homeowners Ass'n*, 182 Wn.2d at 679; *Samra*, 15 Wn. App. 2d at 836.

G.    ATTORNEY FEES ON APPEAL

Young argues that he is entitled to attorney fees and damages on appeal.  But Young does not identify any applicable law granting him the right to attorney fees or damages on appeal. And even if Young had prevailed, he is not entitled to receive attorney fees because he is representing himself.  *Kozol v. Dep't of Corrections*, 192 Wn. App. 1, 6 n.3, 366 P.3d 933 (2015).  Accordingly, we deny Young's request for attorney fees and damages.

CONCLUSION

We affirm the superior court's judgment affirming the May 2017 Board decision and order affirming DLI's January 2016 order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____

MAXA, P.J.

We concur:

_____

LEE, J.

_____

VELJACIC, J.